# 𝖂𝖍𝖊𝖊𝖑𝖎𝖓𝖌.

## BOWYER v. SEYMOUR et al.

Decided April 27, 1878.

1878
Special Term.
1. A lease contains these words, viz: "And said party of the second part agrees to receive, or pay for the same, in the first year the amount of two thousand tons. Payment for the same, and for all coal and and iron ore received, shall be made on the 1st day of May and the 1st day of November in each and every year, said payment to commence on the 1st day of November, 1872. A failure to make such payment, within sixty days after such payment is due, shall be considered an abandonment of this lease." HELD:

That the words "shall be considered as an abandonment," &c., as employed in the lease, must be considered, in a legal aspect as amounting to no more than the equivalent of the words "shall be considered forfeited," or the words "shall be considered void;" and the effect of the covenant or condition declaring, that "a failure to make such payment, within sixty days after such payment is due, shall be considered an abandonment of this lease," is to make the lease void at the option of the lessor only in cases, where the covenant or condition is intended for his benefit, and he actually avails himself of his privilege.

2. Where the tenant fails to comply with said covenant or condition in said lease, and the landlord demands payment at the time, place, and in the manner prescribed by the common law, and payment of the rent is not made in proper time, it is at his option to enter upon the leased premises, or such part thereof, as can be entered upon by him.

3. But if the landlord in such case does not re-enter in fact, he may bring his action of ejectment under the 16th section of

chapter 93 of the Code; and when in such case his declaration in ejectment is served on the tenant in possession, when there shall be such tenant, or if the possession be vacant, by affixing the declaration upon the chief door of any messuage or any other conspicuous place on the premises, which' service shall be in lieu of a demand and re-entry, and upon proof in the court, by affidavit in case of judgment by default, or upon proof on the trial, that the rent claimed was due, and no sufficient distress was upon the premises, "he shall recover and have execution for such lands," subject of course to the provisions of the 17th section &c., of said chapter 93 of the Code of this State of 1868.

1878
Special Term.

Bowyer
v.
Seymour et 'al.

4. But if the landlord in such case, instead of availing himself of the action of ejectment under said 16th section of said chapter 93, brings an action of unlawful detainer, he cannot sustain such action, if at all, unless he proves not only a demand for the rent due at the time, place, and in the manner prescribed by the common law in such case, but must also, where a re-entry can be made on the leased premises, or any part thereof, prove such re-entry, or its equivalent, before the commencement of his action.

5. Generally where the court below excludes evidence, adduced by a party, from a jury, or refuses to admit evidence offered by a party, and such party excepts to such action of the court, the Appellate Court will not reverse the judgment of the court below for such action, unless it can be seen from the record, that the evidence, so excluded or rejected, was relevant to the issue, and that such party may have been prejudiced by the exclusion of such evidence.

An appeal with *supersedeas*, granted upon petition of John Bowyer, from and to a judgment of the circuit court of Putnam county, rendered on the 23d day of April, 1874, in an action of unlawful detainer, in which said John Bowyer was plaintiff, and Seymour Seymour *et al.* were defendants.

Hon. Joseph Smith, judge of the seventh judicial circuit, rendered the judgment complained of.

The facts of the case sufficiently appear in the opinion of the Court.

*Wesley Mollohan*, for plaintiff in error.

*Smith & Knight,* for defendants in error.

HAYMOMD, JUDGE, delivered the opinion of the
Court :

This is a case of unlawful detainer, commenced and
prosecuted by the plaintiff in the circuit court of the
county of Putnam against the defendants, to recover pos-
session of the tract of land described in the summons issued
in the cause.   The proceeding is based upon chapter 89
of the Code of 1868 of this State.   The summons in the
case was issued in pursuance of provisions of said chap-
ter of the Code on the 15th day of August, 1873; and was
made returnable to the first day of the next October
term of circuit court of said county of Putnam, and was
against Jesse F. Tainter, Seymour Seymour and Ed-
ward Burkley.  The summons was returned, duly execu-
ted upon Seymour Seymour and Edward Burkley, and
"not found" as to Jesse F. Tainter.

At the October term, 1873, of said circuit court of said
county of Putnam, and on the 23d day of October, 1873,
came before said court "the plaintiff, by his attorney, and
the defendants, S. Seymour and Edward Burkley, by
their attorneys ; and thereupon the said defendants for
plea in this behalf say, they are not guilty of unlawfully
withholding the premises in controvery in this cause ; and
of this they put themselves upon the country ; and the
plaintiff doth the like ;" and issue was thereupon joined ;
and thereupon came a jury of twelve good and lawful
men, who were well and truly sworn to try, whether the
defendants unlawfully withhold the possession of the
premises in controversy in this cause, and after hearing
the evidence offered, returned their verdict to the court,
that the defendants, "Edward Burkley and Seymour Sey-
mour, were not guilty."

Afterwards on the 25th day of October, 1873, the
plaintiff moved the court to set aside the verdict of the
jury, rendered in the cause, and award him a new trial,

on the ground that the court erred in excluding the proof, as set out in the bill of exceptions filed in the cause, which motion the court overruled.

Afterwards at a circuit court, held for said county on the 23d day of April, 1874, it appears, that the parties again appeared in court in the cause, and the court rendered judgment on the verdict of the jury in favor of the defendants against the plaintiff, and for the costs of the suit.

It further appears, that on the said 25th day of October, 1873, the plaintiff tendered a bill of exceptions to the opinion and ruling of the court, made during the trial of the cause, by which bill of exceptions it appears, that the plaintiff, to support the issue on his part, first introduced with objection a contract, which is in these words :

" This indenture, made this 29th day of April, A. D.,. 1872, by and between John Bowyer, of Winfield, Putnam county, State of West Virginia, party of the first part, and Seymour Seymour of the city of New York, and State of New York, party of the second part, witnesseth :

" That for and in consideration of $1.00 in hand paid, receipt whereof is hereby acknowledged, and for the further consideration hereinafter named, to be kept and performed by said party of the second part, the said party of the first part doth lease unto the said party of the second part all the mineral, coal, and iron ore underlying the lands of the said John Bowyer, lying in said county of Putnam, said lands being bounded as follows :

"On the north by the lands of Lewis Summers and heirs of Wm. Gillespie ; on the east by lands of L. Summers aforesaid ; on the south by lands of heirs of W. Erwin, W. W. Love, and S. McGuire ; on the west by lands of Lewis Vintroux's heirs, being the Coal branch survey, containing five hundred and sixty acres, the Horse creek survey, containing six hundred and forty-

eight acres, and a certain survey adjoining, containing one hundred and sixty-two acres; the whole containing thirteen hundred and seventy acres, more or less.

"In consideration of the said lease, the said S. Seymour agrees to proceed to operate for the mining of coal, and agrees to pay for all coal mined and taken away from said lands the sum of ten cents for each and every ton of twenty-two hundred and forty pounds, the amount of coal mined to be ascertained and determined by the weight books kept by —— of the second part; and the party of first —— shall have access to the same at all reasonable times for the purpose of ascertaining amount of coal taken away. It is further agreed, that if said second party should discover iron ore of sufficient quantity and quality to justify the mining thereof, they shall pay for each and every ton so mined the sum of ten cents, said ton to consist of twenty-two hundred and forty pounds.

"And said party of the second part agrees to mine or pay for the same, in the first year, the amount of two thousand tons. Payment for the same, and for all coal and iron ore mined, shall be made on the first day of May and the first day of November in each and every year, said payment to commence on the first day of November, 1872. A failure to make such payment, within sixty days after such payment is due, shall be considered an abandonment of this lease. And should such party of second part cease operations for mining on said property for a period of twelve months, such cessation of operations shall be deemed an abandonment of said lease; or a failure to commence operations in good faith for a like period of twelve months from date hereof shall be considered an abandonment hereof.

"And said party of the first part agrees to, and does grant, to party of second part the right to erect buildings for use of mines, and for the necessary operations of mining, and the right to build and make roads and rail-

roads for the transportation and working of said coal, and the right to cut and use timber for the use of the mines, and for building cabins for the use of the miners; and no timber shall be carried away, but shall be used on the premises; also, the right to use and occupy all the buildings upon the said lands. If the party of the second part should elect to give up this lease, he shall, upon giving sixty days' notice, have the right to remove all machinery and improvements, that may have been made, excepting such cabins and buildings made from lumber cut on land as aforesaid, which, in case of abandonment, shall be left on the land.

1878
Special Term.

Bowyer
v.
Seymour et al.

"It is further agreed, that after the first year, as aforesaid, the said second party shall mine or pay for four thousand tons yearly, payments to be made semi-annually, as aforesaid. And it is mutually agreed, that neither party shall erect, or allow to be erected, any buildings for the purpose of the sale of intoxicating liquors; and further that nothing herein shall prevent the party of the first part from drilling and boring for oil or salt water, and working the same; providing he shall not interfere with the operations for mining. The erasure and alteration on line 23, folio 2, and the erasure on line 8, folio 4, were made before signing. As witness our hands and seals this twenty-ninth day of April, 1872.

"JOHN BOWYER,        [Seal.]
"SEYMOUR SEYMOUR, [Seal.]"

"Witness—WM. M. SMITH,
          J. H. HARMAN."

"STATE OF WEST VIRGINIA, COUNTY OF PUTNAM, TO-WIT:

"I, W. W. Brown, recorder of said county, do certify, that John Bowyer and Seymour Seymour, whose names are signed to the above writing, bearing date April 29, 1872, have acknowledged the same before me in my county aforesaid.

Given under my hand this 10th day of June, 1872.

"W. W. BROWN, Recorder.

"WEST VIRGINIA, PUTNAM COUNTY, }
          RECORDER'S OFFICE, June 10, 1872. }
    " The foregoing deed or lease was this day presented
to me in my office, and thereupon, together with the
certificate of acknowledgment and 50 cent U. S. reve-
nue stamp thereunto annexed, admitted to record.
          "Teste :

                              "WM. T. BAYES,
              "Deputy for W. W. Brown, Recorder.
    "A Copy Teste :
                    "J. S. MIDDLETON, Clerk."
    " Plaintiff then proved by a witness, Jerome T.
Bowyer, that the land mentioned in said summons was
the same as that mentioned in the contract, and that it
was in Putnam county, and that the defendants took
possession of the land under said contract, and were
in possession of the same, when this action was brought;
also that the money mentioned in said contract, to be
paid by said Seymour to said John Bowyer on the 1st
day of November, 1872, had not yet been paid ; that
in April, 1873, said witness, as agent for plaintiff, called
the attention of said Seymour to the fact, that said
money was due and had not been paid, and read the
said contract to him, and told him it was "abandoned;"
that Seymour replied, that it does read that way, but
you will not hold me to it; to which witness replied,
that said contract was now at an end ; and they proposed
to let it remain so.   Plaintiff also proved, that said
Seymour had repeatedly since asked to fix the matter
up by a new contract, which plaintiff had always refused
to do; and then rested his case ; and the defendants in-
troduced no evidence at all.   And thereupon the de-
fendants asked the court to exclude all of the above
parol proof relating to the abandonment or forfeiture of
said contract, which motion was resisted by plaintiff, and
the same being argued and considered by the court was
sustained, and all of said proof excluded from the jury.

To which opinion and ruling of the court the defendant excepted, and prays, that the same may be signed, sealed, and saved to him, which is here done, and made a part of the record of this cause.

1878
Special Term.

Bowyer
v.
Seymour *et al.*

"J. SMITH, [Seal.]"

To the said final judgment, rendered in this cause by said circuit court on the 23d day of April, 1874, the plaintiff hath obtained from this Court a *supersedeas* upon his petition and assignment therein of error.

Thus the case is now before us for review and determination, as to whether there is error sufficient in said judgment to the prejudice of the plaintiff, to authorize this Court to reverse the same.

The errors assigned by the plaintiff in the said judgment are as follows: " 1st. The court erred in excluding from the jury the evidence, set out in the bill of exceptions, in regard to the abandonment of the lease, which lease is fully set out in said bill of exceptions. "2d. The court erred for the reasons aforesaid in refusing to set aside the verdict and award a new trial."

In the proceeding of unlawful detainer, when the summons is executed on only two of three defendants, the plaintiff may proceed against those, upon whom the summons is served, although there can be no judgment against the other defendant. *Harman* v. *Odell*, 6 Gratt. 209.

In order to a proper determination of this cause, upon the questions involved in the assignments of error aforesaid, it is necessary to ascertain and determine, in the first place, the legal effect of the said deed of lease and the rights of the plaintiff thereunder for the failure of the defendant, Seymour, to pay the rent money, covenanted to be paid at the time specified in the lease, and the duty, or act or acts, to be performed by him, in order to terminate said lease or give him the legal right to re-enter upon the premises, because of the failure of the tenant to pay the rent at the time specified in the lease.

1878
Special Term.

Bowyer
v.
Seymour et al.
The provision in the lease, in respect to rent, is: " A failure to make such payment, in sixty days after such payment is due, shall be considered an abandonment of this lease" &c. It seems to me that the words, "shall be considered an abandonment" &c., as employed in the lease, must be considered in a legal aspect, when applied to this lease, as amounting to no more than, and in fact as being equivalent to, the words "shall be considered forfeited," or the words "shall be considered void." Not only may the lessor re-enter for a forfeiture; but his heir or executor may also re-enter, when entitled to the reversion. But it is entirely optional with the lessor, whether he will avail himself of this right of entry or not, although by the terms of the proviso the term is to cease, or become void, for the non-performance of the covenants; and if the lessor does not avail himself of it, the term will continue. There was however a distinction formerly drawn between leases, that were declared to be void upon a breach of condition, and such as were to be voidable only. In the case of a lease for lives, if the lessee was guilty of any breach of the condition, the lease was only voidable, although, by its express terms, it was to become thereby absolutely void; and the landlord might waive his right to re-enter, by the acceptance of rent, or by some other act, which amounted to a dispensation of the forfeiture. But upon the breach of such a condition on a lease for years, the lease became *ipso facto* void, and no subsequent recognition could set it up again. Yet if the condition in such case was merely, that the lessor might re-enter, the lease was voidable only, and might be affirmed by an acceptance of rent, if the lessor had notice of the breach at the time. But the force of this distinction has been almost, if not quite, abated by the modern decisions, which establish, that the effect of a condition, making a lease void upon a certain event, is to make it void at the option of the lessor only, in cases where the condi-

tion is intended for his benefit, and he actually avails himself of his privilege.

The English law in this respect has been generally followed in this country; and such a lease is good until avoided, though the lessee is estopped to set it up against the lessor. Taylor's, Landlord and Tenant pp. 361, 362 and §§ 492, 288; *Armsley* v. *Woodward,* 6 B. & C. 519.; *Reede* v. *Farr* 6 M. & S. 121 ; *Doe* v. *Bancks* 4 B. & A. 401 ; *Roberts* v. *Davey* 4 B. & Ad. 664; *Doe* v. *Birch* 1 M. & W. 402; 1st vol. 5th ed. of Parsons on Contracts, page 506; vol. 2, Platt on Leases p. 327; 1st Smith's Leading Cases 19.

Parsons on Contracts, 1st vol. 5th ed. 506, says: "A distinction formerly prevailed between a proviso declaring, that the lease should be void on a specified event, and a proviso enabling the lessor to determine by re-entry ; and it was held, that in the former case the lease become absolutely void on the event named, and was incapable of being restored by acceptance of rent, or other act of intended confirmation ; while in the latter some act, such as entry or claim, must have been performed by the lessor to manifest his intention to end the demise, which was voidable in the interval, and consequently confirmable. This distinction however is now exploded; and it is held, that the lease is voidable only at the election of the lessor, but not of lessee, though the proviso expressly declare, that it shall be void." &c.

The lease in question did not become absolutely void on the 1st day of November, 1872, by the failure of the tenant to pay the money or rent, then covenanted to be paid, but only voidable at the option of the plaintiff, the landlord.

In general, when an estate is defeasible on the non-performance of a condition subsequent, it is not absolutely defeated upon the happening of the contingency, on which it is defeasible ; the estate will continue afterwards, unless the grantor or his heirs take advantage of

the breach of condition by an actual entry, which is generally necessary to revest an estate of freehold. A different rule formerly prevailed with regard to a term for years ; and it was considered, that a breach of condition of the lease absolutely determined it, and could not be set up again by any act, even on the part of the landlord; but this doctrine is no longer recognized. Taylor's Landlord and Tenant, § 288 top p. 209.

Mr. Lomax in the second edition of his Digest, vol. 2d at top page 129, says : "But it is settled by modern authorities, that notwithstanding the proviso in the lease, that it shall be *ipso facto* void to all intents and purposes, the lease is nevertheless not entirely vacated, but only as against the lessee ; and it leaves the lessor the option of entering for the forfeiture, or not, at his pleasure. The modern construction of the rule is founded upon principles of justice ; for according to the old distinction, the lease would virtually be determinable at any time at the will of the lessee, who by his own violation of the stipulations in the lease might insist, that the lease had determined."

Chancellor Kent in the sixth edition of his commentaries, in the 4th vol. at page 125, says : "Subsequent conditions are those, which operate upon estates already created and vested, and under them liable to be defeated. Of this kind are most of the estates upon condition in law, and which are liable to be defeated on breach of the condition, as on failure of payment of rent, or performance of other services annexed to the estate." And, at page 126 of same book, the Chancellor says : "The material distinction between a condition and limitation consists in this, that a condition does not defeat the estate, although it be broken, until entry by the grantor or his heirs ; and when the grantor enters, he is in, as of his former estate. His entry defeats the livery made on the creation of the original estate, and consequently all subsequent estates or remainders dependent thereto. Condi-

tions can only be reserved for the benefit of the grantor, and his heirs ; a stranger cannot take advantage of the breach of them. There must be an actual entry for the breach of the condition, or there must be, in case of non-payment of rent, an action of ejectment brought as a substitute, provided by the statute of 4 Geo. II, c. 2. for the formal re-entry at common law; and which provision on this point is adopted in New York, and in several of the other States, which have followed the English system ; but it is in the nature of a limitation to determine the estate, when the period of the limitation arrives, without entry or claim ; and no act is requisite to vest the right in him, who has the next expectant interest."

The lease in the cause before us is not a lease for a term of years ; but it is a perpetual lease perhaps, under the 8th section of chapter 71 of the Code of 1868 of this State. Be this as it may, it is certainly a lease for, not less than for life, if it in fact amounts to more than a license, and I think it is more than a license. "Leases may also be of perpetual duration ; and they are usually in form a grant of the land in fee, reserving the payment of an annual rent, instead of a present consideration, and of this class the New York manor-leases, and the fee-form leases in Pennsylvania, are specimens; or they may be leases to continue so long, as the lessee shall continue to pay the rent, and perform the covenants contained therein : thus a demise to A. B., his heirs and assigns, for such a term of time, as he pays rent, he on his part covenanting for himself and his heirs to pay rent and perform covenants, is a perpetual lease, and can only be terminated by the mutual agreement of the parties, or until the lessor shall elect, on default to pay the rent and perform the covenants, to consider it forfeited." Taylor's Landlord and Tenant, §72, pp. 52, 53 ; *Folts* v. *Huntley,* 7 Wend. 210.

But whether the lease under consideration be a perpetual lease, or a lease for life, is wholly immaterial, so far as this

case is concerned; for at common law in either case the landlord can only terminate the lease by re-entry, if the estate leased be in whole or part susceptible of an entry. *Arnsby* v. *Woodward*, 6 B. & C. 519, top page 241; *Doe* v. *Nash & Birch*, 1 M. & W. 402; Adams on Ejectment, with notes, published in 1846, top page 198, and side page 197.

At common law, when a forfeiture was sought to be enforced for the non-payment of rent, there was no distinction made between cases, where there was a sufficient distress upon the premises, and where there was not. In general, before a landlord could enter for the non-payment of rent, he must have made a formal demand of the precise *sum due* for the last current quarter; and if the demand included any portion of the rent of a previous quarter, it would have been bad. It must also have been made on the day, it became due or legally demandable, at a convenient time before sun set; at the place where, by the terms of the lease it was made payable; or if there be no place mentioned in the lease, at the most notorious place upon the demised premises, which, if there be a dwelling house, is the front door. But the lessee might seek the lessor at any time during the natural day, that is, before twelve at night, on which the rent becomes due, and make a personal tender of the rent, in order to save the forfeiture &c. Taylor's Landlord and Tenant, §493; Adams on Ejectment, with notes, 161 top page and 160 side page.

But, to avoid some of the foregoing inconveniencies and niceties of the common law, the Statute of George II c. 28 was enacted. Adams on Ejectment with notes, page 162. For this purpose the Legislature of this State enacted the 6th and 16th and 17th sections of chapter 93 of the Code of 1868, which are substantially the same as in the Code of 1860 of Virginia. As I do not see, as the case stands, or is now presented, that the 6th section is involved in it, I shall confine myself to the

said 16th and 17th sections. These two last named sections are as follows; viz:

" 16. Any person, who shall have the right of re-entry into lands by reason of any rent issuing thereout being in arrear, or by reason of the breach of any covenant or condition, may serve a declaration in ejectment on the tenant in possession, when there shall be such tenant, or if the possession be vacant, by affiixing the declaration upon the chief door of any messuage, or at any other conspicuous place on the premises; which service shall be in lieu of a demand and re-entry; and upon proof to the court, by affidavit in case of judgment by default, or upon proof on the trial, that the rent claimed was due upon the premises, or that the covenant or condition was broken before the service of the declaration, and that the plaintiff had power thereupon to re-enter, he shall recover judgment and have execution for such lands.

"17. Should the defendant, or other person for him, not pay the rent in arrear, with interest and costs, nor file a bill in equity, for relief against such forfeiture, within twelve months after such execution executed, he shall be barred of all rights, in law or equity, to be restored to such lands or tenaments."

There are other sections of said chapter having some relation to the subject; but I deem it unnecessary now to notice them. As this statute in effect dispenses with a demand for rent in those cases only, where there is no sufficient distress upon the premises, it is still necessary for the lessor to comply with all the formalities of the common law, before he can proceed upon a claim of re-entry for the non-payment of rent, if a sufficient distress can be found. And I presume the same rule applies, where the lease on its face is declared to be absolutely void in case of its non-payment. Adams on Ejectment top page 168, side page 169 ; Taylor's Landlord and Tenant, § 297.

The plaintiff in this case, as we have seen, did not bring his action of ejectment, but brought his action of unlawful detainer. It is quite clear, that plaintiff in an action of unlawful detainer is not entitled to the benefits of the provisions of said 16th section of chapter 93 of the Code, as to "a demand and re-entry," said section only applying to actions of ejectment. To enable the plaintiff to sustain his action of unlawful detainer, if he could sustain it at all in such a case as the one before us, he must prove not only a demand for the rent due at the time, and place and in the manner prescribed by the common law, but must also, where a re-entry can be made on the leased premises or any part thereof, prove such re-entry or its equivalent, before action brought.

This rule, as to re-entry by the landlord before action brought by him to recover the premises by reason of a forfeiture of the lease, was not enforced, and was held not to apply at common law in cases of ejectment brought by the landlord against the tenant, because it was considered, that the confession of lease, entry and ouster was sufficient without proof of re-entry. *Little* v. *Heaton*, 1 Salk. 259. And in the case of *Goodright, lessee of Hare's widow* v. *Cator et al.*, 2 Doug. 477, it was held, that actual entry is not necessary to take advantage of a clause in a lease to re-enter for non-payment of rent. In that case Lord Mansfield at page 483 says: "I have always taken a distinction to be, that, where entry is necessary to complete the landlord's title (as where a power is reserved to him in case of non-payment of rent), then the confession of lease, entry and ouster is sufficient." Adams on Ejectment and the notes 158; Id. 278; Taylor's Landlord and Tenant, § 298.

Neither of these essential prerequisites, to-wit: demand and re-entry, were proved by the plaintiff in this cause at the trial. The plaintiff having closed his evidence in chief, as I infer from the bill of exceptions, and the defendant, having introduced no evidence, moved the

court to exclude the parol evidence, which had been given to the jury, which the court did; and it not appearing that the plaintiff had adduced before the jury any evidence tending to prove any legal demand of the rent due, or a re-entry by him, or that he offered to give any such evidence to the jury, after said parol evidence, in the bill of exceptions mentioned, was excluded from the jury by the court, I am unable to see, under the circumstances, that the said parol evidence, so excluded by the court from the jury, was relevant to the issue in the cause, or that the plaintiff could have possibly been prejudiced by its exclusion from the jury.

It does not appear by the bill of exceptions, that the plaintiff offered any evidence to the jury, tending to prove an abandonment or forfeiture of the lease under any of the provisions or conditions thereof, except that for the non-payment of rent or money; and it does not therefore appear, that the court by excluding said parol evidence, under the circumstances detailed in the bill of exception, made any ruling, from which it can be fairly inferred, that the court thereby in any respect prevented or hindered the plaintiff from proving by relevant and proper parol evidence, any of the causes of abandonment or forfeiture, provided for in said contract, or that the court decided in effect or otherwise, that the plaintiff should not prove his case by legitimate evidence.

There are cases, which by the common law will work a forfeiture of a lease under some circumstances other than provisions or conditions contained in the lease; but, as they are in no wise involved in this cause, I deem it unnecessary to specify them, or to refer to or indicate in any respect, what it would or might be necessary for the landlord to do in such a case, to enable him to recover in an action such as this, or in ejectment under our statute.

Generally, when the court below excludes evidence, adduced by a party, from the jury, or refuses to admit evi-

*1878
Special Term.*

*Bowyer
v.
Seymour et al.*

*Syllabus 5*

dence offered by a party, and such party excepts to such action of the court, the Appellate Court will not reverse the judgment of the court below for such action, unless it can be seen from the record, that the evidence, so excluded or rejected, was relevant to the issue, and that such party may have been prejudiced by the exclusion or rejection of such evidence.

As the judgment of the court is never conclusive in an action of unlawful detainer, appellate courts do not regard writs error and *supersedeas* in such cases so favorably, when the judgment of the court below does not tend to produce a change of possession, as when it does.

There being no error in the ruling of the circuit court in excluding said parol evidence from the jury, it follows, that there is no error in the circuit court refusing to set aside the verdict of the jury, and grant the plaintiff a new trial for the exclusion of said parol evidence.

For the foregoing reasons it seems to me, that there is no error in the said judgment of the circuit court of the county of Putnam, rendered in this cause on the 23d day of April, 1874; and the same must therefore be affirmed, with costs and $30.00 damages to the appellees.

The other Judges concurred.

JUDGMENT AFFIRMED.