# CHARLESTON

## WILLS v. WILLS.

Submitted September 2, 1914. Decided September 15, 1914.

1. DIVORCE—*Grounds*—*Discourtesy.*

Uniform and continued discourtesy of one spouse to the other, manifested in various ways, such as denial of social intercourse, coolness of manner, disavowal of love, expression of hatred and refusal of company at church and elsewhere, while both reside together, the husband providing support and the wife performing the ordinary household duties, is not alone ground for divorce. (p. 710).

2. SAME—*Grounds.*

Nor is such discourtesy combined with exclusion of the husband from access to the wife's bed and refusal of sexual intercourse, while the marriage relation remains otherwise unimpaired, ground of divorce. (p. 710).

Appeal from Circuit Court, Monroe County.

Suit for divorce by George A. Willis against Nancy V. Willis. From decree for plaintiff, defendant appeals.

*Reversed, and bill dismissed.*

*John W. Arbuckle,* for appellant.

*J. A. Meadows,* for appellee.

POFFENBARGER, JUDGE:

The decree of absolute divorce in this cause, from which an appeal has been taken, is founded upon evidence proving or tending to prove the following facts:

The parties were married September the 9th, 1880, and have ever since resided together and continue to do so. Unto them, have been born seven children, all of whom except two are above the age of twenty one years and away from home,

doing for themselves. The two remaining at home were, at the time of the filing of the bill, eleven and nineteen years old, respectively. Since the date of the birth of the last child, the wife's conduct and demeanor toward her husband have been radically different from her former attitude toward him. Although she has remained under his roof, taken care of the children, done the housework, cooking, mending and washing and presided at the table, just as she had previously performed these services, she has uniformly and persistently denied her husband all social intercourse as well as access to her bed. Visitors at the house, as well as members of the family, say she treats him coldly and snappishly in their presence and does not demean herself toward him as wives usually and ordinarily treat their husbands. She refuses to accompany him to church or elsewhere and passes him on the road without recognition. She has repeatedly declared she does not love him and never can and hates him, and says she wants a man she can love and of whom she would not be ashamed. The husband establishes his good character and proves his repeated and persistent efforts to effect a reconciliation with her. The ministers and members of the religious society to which both belonged have used every possible effort to reconcile them but without avail. They finally severed the wife's membership in the church on account of her conduct toward her husband.

These charges supported by evidence are not admitted by the defendant. On the contrary she denies many of them and has endeavored to refute them by her own testimony and that of other witnesses. She would justify her denial of his privilege of access to her bed upon two grounds, (1) a false accusation by him as to the paternity of her last child, made some time before its birth, and (2) her inability by reason of a cancerous affliction, to afford the privilege of intercourse, without injury and pain. A short time before the institution of this suit, she was relieved, by a surgical operation, of a fibroid tumor of considerable size, and her physician testifies its growth was probably of several years duration.

The facts alleged, other than non-intercourse, which is not denied, do not amount to cruel and inhuman treatment, nor

do they alone constitute grounds for divorce. *Huff* v. *Huff,* 73 W. Va. 330, 80 S. E. 846; *Goff* v. *Goff,* 60 W. Va. 9; Nathan v. *Nathan,* 30 Grat. 307. Nor does the fact of non-intercourse, if the same can be regarded as not justified by the physical condition of the wife, constitute ground for divorce. *Reynolds* v. *Reynolds,* 68 W. Va. 15.

But treating the disputed facts as having been established, the argument proceeds upon the theory of desertion. Rather admitting insufficiency of non-intercourse alone, it combines this circumstance with the others alleged, and argues that all taken together constitute legal desertion. However, all of these circumstances do not completely sever the marriage relation. The wife remains under the husband's roof, supervises his household, cares for the children and performs all the duties incident to the marriage relation, except those mentioned. In this state, mere incompatibility constitutes no ground for divorce, as the authorities cited already show, and the circumstances relied upon, other than non-intercourse, do not tend to prove anything more than that.

The soundness of the ruling in *Reynolds* v. *Reynolds* is questioned and it conflicts with some decisions in other jurisdictions. But it is clearly sustained by the weight of authority and the reasons of public policy entering into and underlying the marital relation. The policy of the law opposes and denies the allowance of divorces except for weighty and very substantial reasons. To make this a cause for divorce would render the procurement of divorces easy and afford a means of separation to all who desire it, whatever the motive might be. The law may well deem the natural passion of the parties, accompanied by legal and rightful opportunity of gratification, a sufficient inducement to the performance of marital duty in this respect. And ordinarily it is, for the complaint made here by one spouse against the other is seldom heard. The rules of law are made to conform to and answer the purposes of ordinary situations, not extraordinary or exceptional cases. In other words, the trouble here complained of will ordinarily arise in but few cases, say one in a thousand. To make it a ground of divorce would likely bring forth divorces in hundreds of instances in which they would

not otherwise occur. Some of the authorities relied upon liken the wife's refusal to a case of impotency of one of the parties to the marriage, but the two cases are not analogous. Pre-existing incurable impotency of one of the parties to a marriage renders impossible the procreation of children, and thus defeats one of the chief purposes of marriage. Mere aversion to the performance of the act of intercourse is not a physical obstacle to the accomplishment of this high and sacred purpose. Impotency is. In cases of normal persons, the aversion may be overcome and generally is. The parties to this cause are not exceptions from the general rule. The wife's hope of posterity has induced her to bear seven children. Procreative power of both parties to the marriage relation is essential to the achievement of one of its chief purposes, wherefore the law deems it a matter of the highest importance. But, when the act by which procreation is effected is regarded as mere indulgence, no known principle of law dignifies one form of indulgence or pleasure above another. Moreover, impotency is not a ground of divorce, unless it existed at he time of the marriage. The aversion complained of here is subsequent.

For the reasons stated, the decree is erroneous and will be reversed and the bill dismissed, with costs to the appellant in both this court and the court below.

*Reversed, and bill dismissed.*