AMERICAN FINANCE COMPANY *v.* ERNEST M. LEEDY *et al.*

(No. 7181)

Submitted February 23, 1932.   Decided March 22, 1932.

*Robert Baker* and *French, Easley, Easley & French*, for appellant.

*John Kee* and *A. J. Lubliner*, for appellees.

18

LITZ, JUDGE:

This suit was instituted December 7, 1929, by American Finance Company, a corporation, against Earnest M. Leedy and Mary T. Leedy, his wife, to set aside, as fraudulent, a deed from him to her (as M. T. Leedy), conveying, for a recited consideration of $4,500 "cash in hand paid", a residence lot on Greenbrier Street, in Bluefield, West Virginia, and to subject the property to the payment of a claim of plaintiff against Leedy. From a decree, dismissing its bill, plaintiff has appealed.

By deed dated January 15, 1919, Floyd Henderson and wife conveyed to defendant, Mary T. Leedy, an improved residence lot in said city, in consideration of $1,550, paid and to be paid by her as follows: $210 cash in hand, and the balance in sixty-seven monthly installments of $20 each, which, according to her testimony, she paid with income earned from sewing and keeping boarders. By deed dated October 18, 1821, John M. Wirgman and wife, in consideration of $500, conveyed to Leedy the lot in controversy. By deed dated November 1, 1922, Mrs. Leedy conveyed her lot to W. C. Shrader and wife, for $2,500, $150 of which was paid in cash, and the remainder in monthly installments of $30 each. Immediately thereafter, Leedy, or he and his wife, began the erection of a seven room house upon the Wirgman lot, which they have occupied since its completion in 1924. October 22, 1927, F. M. Southerland granted lots 15 and 16 in the Hale Addition of said city to Leedy in consideration of $1,500, paid and to be paid as follows: $500 in cash, and the balance in six installments, evidenced by five notes of $166 each, and one of $170, payable semi-annually, and secured by a deed of trust on the property. On December 22, 1927, Southerland conveyed to Leedy part of lot 28 in the Frederick Street Extension of Bluefield, on which a trust deed was contemporaneously executed by Leedy and his wife to secure the payment of the unpaid purchase price evidenced by five notes of $208.33 each, and one of $195.83, payable semi-annually. November 8, 1927, plaintiff purchased the first series of notes executed by Leedy to Southerland, and on January 26, 1928, it became the holder

in due course of the second series. Two of the notes in the first series were paid by defendants at maturity, but default being made in payment of the remaining notes, the property was sold for $50 under the deed of trust. None of the second series of notes has been paid, and the property securing the payment thereof was sold to satisfy a prior lien.

The deed sought to be cancelled, bearing date November 1, 1927, was acknowledged June 19, 1928. From an inspection of the original paper, which is typewritten in full except for the signatures of the grantors and the notary, it seems that the dates in the caption and certificate of acknowledgment were written contemporaneously with the other parts of the instrument. Defendants undertake to say that the deed was prepared before the date of acknowledgment, but are unable to fix the time definitely. Nor do they claim that it had been signed prior to the date of acknowledgment; and the signatures of the grantors and notary appear to have been written with the same kind of ink. It is a fair presumption, from these circumstances, that the deed was drafted on the date of its acknowledgment. The notary taking the acknowledgment, who also drafted the paper, was not examined. The apparent antedating of the deed and the misleading designation of the wife as grantee, without satisfactory explanation, are circumstances of fraud.

Of the total amount alleged to have been invested in the property by Mrs. Leedy, only a small part thereof is specifically accounted for by her. She testified in her examination in chief that she paid approximately $4,500 on the property (the actual value of which is not shown), as follows: on the purchase price of the lot, $850; on the construction of the house, $2,500 derived from the sale of her property to Shrader, a personal check for $225.56, payable to Bailey Lumber Company, $650 earned by her as city and county registrar of voters from 1922 to 1929, and earnings of $20 per month, from 1922 to 1929, for sewing, and $50 per month, from 1922 to 1926, for keeping boarders. Upon cross-examination, she estimated the amount paid on the lot to be from $30 to $100; for plastering the house, $25 to $35; for plumb-

ing and wiring, $116; and to Bailey Lumber Company for building material, $650 to $850.

Leedy testified that his wife paid most of the purchase price on the lot, and that she applied the $2,500, received from the sale of her property, and her earnings, to the cost of materials and labor, amounting to approximately $3,500, used in the construction of the house. Both also say that she lathed all except two of the rooms, and that Leedy, a carpenter by trade, worked on the house when not employed elsewhere. He further testified that the notes held by the plaintiff constituted his only indebtedness at the time he transferred the property to his wife; that he had intended to pay them with money due him from Southerland for the construction of a garage and apartment building for him in the latter part of 1927; but that Southerland became insolvent before paying him for the work.

The evidence does not support Mrs. Leedy's contention that she expended the $2,500 received from the sale of her property to Shrader, and the $650 earned by her as registrar from 1922 to 1929, in the construction of the house, for Shrader had paid her, according to the terms of the sale, approximately $800 at the time the house was completed; and she could not have earned, by that time, more than $200 as registrar. Moreover, at the time she made the conveyance to Shrader (who, she says, did not pay punctually and was seven years discharging the entire indebtedness), she still owed twenty-one notes on the purchase price of the property.

She does not say whether she was induced to contribute her money to the cost of the property because of an agreement by her husband that he would, in return, convey it to her. Leedy asserts that "about the time I bought those lots in Hale Addition, or before, it was sometime before, when she sold her property, it was understood I would do this; I would deed her this property if she would put her money into this property." Later, he said: "You see she had sold her property and put it in this and I figured I would give her this (property). Mr. Southerland, at that time, promised to buy the lumber, rather furnish me the lumber, to built me a house on the Hale Addition lot." The first of these statements is indefinite as to the date of the agreement, if any,

and the second one, while also indefinite as to the time the deed was executed, indicates that the conveyance was made, not as a result of a previous understanding, but because he "figured" that since she had contributed to the cost of the property, he "would give" it to her, and build another house on the Hale Addition lot. These indefinite and unconfirmed statements of Leedy, in the absence of corroborative testimony by her, do not clearly establish an agreement by him, prior to her contributions, to convey the property to her; notwithstanding he answered affirmatively, the leading question, "And she did put her money into the building of this house after that agreement?" The money advanced by her for the improvement of his property is presumed to be a gift to him in the absence of clear and definite proof of a prior or contemporaneous agreement by him to repay the money or convey the property. *Crumrine* v. *Crumrine,* 50 W. Va. 226, 40 S. E. 341; *Horner* v. *Hoffman,* 52 W. Va. 40, 43 S. E. 132, *McGinnis* v. *Curry,* 13 W. Va. 29; *Zinn* v. *Law,* 32 W. Va. 447, 9 S. E. 871; *Keller* v. *Washington,* 83 W. Va. 659, 98 S. E. 880; *Pickens* v. *Wood,* 57 W. Va. 480, 50 S. E. 818. Judge Cox, speaking for the court in *Pickens* v. *Wood,* explains the justness of and necessity for the rule, by saying: "The false claim of a secret trust is more dangerous than a fraudulent conveyance placed upon record which gives notice to the world and may be attacked while the evidence is at hand. A secret trust may be claimed to have rested solely within the knowledge of the husband and wife for years until all evidence to overthrow it is beyond reach and then be brought forth to defeat the collection of just debts contracted upon the faith that the ownership of the property is as the record show it to be. To establish a secret trust upon such evidence would enable the debtor to defeat his debts upon the mere declaration that his property is not his own. Such a secret trust should never be enforced against the creditor of the husband in favor of the wife, except upon the clearest and most convincing proof."

We therefore reverse the decree, set aside the deed, and remand the case.

*Decree reversed; deed set aside; case remanded.*