MABEL GLADYS DAVIS

*v.*

ORA MARCELLUS DAVIS

(No. 10428)

Submitted April 15, 1952. Decided May 27, 1952.

Fox, JUDGE, not participating.

*Hardin R. Harmer, Benjamin H. Webb, II,* for appellant.

*Maxwell & Young, Haymond Maxwell, Sr.,* for appellee.

LOVINS, JUDGE:

This is a suit for separate maintenance instituted in the circuit court of Harrison County by Mabel Gladys Davis, plaintiff, against Ora Marcellus Davis, defendant. The suit was based on cruel or inhuman treatment allegedly

inflicted on the plaintiff by the defendant, such as would entitle her to divorce.

Cruel or inhuman treatment, being a statutory ground of divorce under Code, 48-2-4, as amended by Chapter 35, Acts of the Legislature, Regular Session, 1935, if established by proof, would authorize separate maintenance as prayed for by plaintiff. Code, 48-2-29, as amended by Chapter 35, Acts of the Legislature, Regular Session, 1935.

The trial chancellor pronounced a decree adverse to the defendant, who prosecutes this appeal.

Plaintiff and defendant were married on the 17th day of May, 1944. They resided in Clarksburg, West Virginia, with the plaintiff's mother for approximately one year when, owing to difficulty in obtaining suitable living quarters, plaintiff, defendant and plaintiff's mother moved to a small tract of land of approximately 9 acres, situated near Saltwell in Harrison County. There are two buildings situated on such land, one being a garage with a residential apartment, in which apartment the defendant's mother and father resided until the father's death and in which the mother still resides. The other building is referred to in the record as the "big house" and was, properly speaking, the main residence. The "big house" was repaired and improved and, possibly, some additions were made to it. According to the testimony of the plaintiff, the entire cost of the improvements and additions was paid out of a fund in a bank account in the joint names of defendant and the plaintiff.

The mother of the plaintiff resided with them in their residence and seems to have performed many of the household tasks and chores, cooking the meals for the family on week days, since both defendant and plaintiff were employed, the plaintiff receiving an annual income of about $2,300.00, and the defendant earning approximately $3,100.00 annually. There is testimony indicating that the plaintiff and her mother had slight misunderstandings and that the mother attempted to supervise the farm chores performed by the defendant.

On one occasion, plaintiff and defendant, together with a number of other people, went to Holly River State Park on a picnic. Among other persons who went on that trip was a woman, friend of the plaintiff, and there is testimony tending to show that the plaintiff became jealous of the defendant because of his attentions to her friend. At least, she says that she was embarrassed by defendant's conduct on that occasion. Thereafter, she upbraided defendant because of his conduct. That episode was the commencement of defendant's alleged misconduct toward his wife. After the conversation relative to defendant's behavior at the picnic above mentioned, the defendant commenced to treat his wife with coldness and indifference. He would fail or refuse to come to his meals, and, on one occasion, he told her to "go to hell."

The plaintiff and defendant traveled daily together from their home to the city of Clarksburg in defendant's automobile, and on many of these trips he would refuse to engage in conversation with her. He would refuse to converse with her while they were at home and would demonstrate indifference and disregard of the plaintiff when they had visitors.

In April, 1949, plaintiff became ill and was required to go to a hospital in Clarksburg, West Virginia. While in such hospital, she was subjected to a surgical operation. It is shown that the defendant did not visit her while she was in the hospital on more than two occasions. On the day of the operation, a nurse requested certain persons to locate the defendant and have him come to the hospital. In response to that request, he came to the hospital. Defendant possibly visited the plaintiff on another occasion while she was in the hospital. After her stay in the hospital in Clarksburg it was necessary that the plaintiff enter a hospital in Pittsburgh, Pennsylvania, for further treatment. The defendant took her to the hospital in Pittsburgh and gave her money for expenses, and after the treatment was completed, he went back to Pittsburgh and brought her home. In the meanwhile, in March of 1949, the mother of the plaintiff left the plaintiff and de-

fendant's home and procured a three room apartment in Clarksburg where the plaintiff would visit her and, on several occasions, spent the week end.

The land near Saltwell was purchased by the defendant. After the plaintiff and defendant moved to the land, the defendant conveyed a one-half undivided interest therein to the plaintiff. Later, the plaintiff and defendant purchased a smaller tract of land, consisting of approximately 2 acres, which was contiguous to the larger tract. Title to the two tracts of land was owned jointly by plaintiff and defendant for some time. This condition seems to have accentuated and increased the coldness between them and the plaintiff's sensitiveness to her husband's attitude. In August, 1948, she willingly and without request on his part, conveyed her interest in the land to him.

The plaintiff seemed to have kept all the accounts of their expenditures on the improvements made on the farm. She testifies that $6,971.37 was expended for improvements out of joint funds; that $251.88 was spent for the purchase of livestock which was resold and the proceeds placed in their joint account.

The bill of complaint alleges that the defendant was guilty of cruel or inhuman treatment, which she was at a loss to understand; that she was ill and her health impaired; that she was extremely nervous; and that the treatment inflicted upon her by the defendant had impaired her health and would further impair it if she continued to live with him as his wife. A demurrer to the bill of complaint was interposed on the ground that the treatment of defendant merely constitutes incompatibility, and that there were no grounds for a decree of separate maintenance. The demurrer was overruled.

The cause was referred to a commissioner who, after hearing the testimony, reported that cruel or inhuman treatment by the defendant of the plaintiff was established, as to the period following plaintiff's hospitalization, and that the defendant should pay to the plaintiff the sum of $3,359.84 in settlement of their property rights. De-

fendant excepted to that report. The trial court overruled the exception of defendant and decreed that the plaintiff was entitled to live separate and apart from defendant, that the defendant pay her the sum of $30.00 per month for her separate maintenance, that she recover of defendant the sum of $3,359.84; and that the defendant pay the cost of the suit, including an additional fee of $100.00 for counsel for plaintiff. From that decree, defendant appealed.

This suit presents two questions: (1) Does the evidence show cruel or inhuman treatment of the plaintiff by the defendant, and (2) May a court decree out of the property of defendant a sum of money to reimburse plaintiff for expenditures made while she lived with defendant?

A suit for separate maintenance under Code, 48-2-29, as amended by Chapter 35, Acts of the Legislature, Regular Session, 1935, sets forth the specific grounds on which suit may be maintained. The pertinent language of that statute reads as follows: "Whenever a husband shall, without good and sufficient cause, have failed to provide suitable support for his wife, or have abandoned or deserted her, or if the wife, for such cause as would entitle her to a divorce, is actually living apart from her husband, and such husband is in either case of sufficient ability to support his wife, the circuit court of any county that would have jurisdiction of a suit for divorce between the parties, shall, at the suit of the wife, in chancery, whether or not a divorce be prayed for, decree to the wife as alimony and separate maintenance such sum out of the husband's earnings and income as the court may determine, * * *".

In the suit at bar, there is no allegation or proof showing that the defendant has failed to provide support for plaintiff, or that he has abandoned her or deserted her. Plaintiff relies upon facts that would entitle her to a divorce, in that the defendant is guilty of cruel or inhuman treatment, which is a ground for divorce under Code, 48-2-4, as amended by Chapter 35, Acts of the Legislature, 1935. The statute authorizing suit for separate mainte-

nance, Code, 48-2-29, as amended, is declaratory of cases decided prior to its enactment, wherein this court held that a wife may have a decree for alimony without a divorce if she had been abandoned and denied support by her husband. *Huff* v. *Huff*, 73 W. Va. 330, 80 S. E. 846. To the same effect are the cases of *Lang* v. *Lang*, 70 W. Va. 205, 73 S. E. 716; *Vickers* v. *Vickers*, 89 W. Va. 236, 109 S. E. 234. See *Wolford* v. *Wolford*, 133 W. Va. 403, 56 S. E. 2d 614.

The decisive question in this case is: Has the defendant inflicted cruel or inhuman treatment on the plaintiff? Incompatibility, without more, is insufficient to warrant a divorce. *Harbert* v. *Harbert*, 130 W. Va. 704, 45 S. E. 2d 15. See *Cochran* v. *Cochran*, 130 W. Va. 605, 44 S. E. 2d 828. To the same effect are the cases of *Huff* v. *Huff*, *supra*; *Lord* v. *Lord*, 80 W. Va. 547, 551, 92 S. E. 749.

In the case of *Goff* v. *Goff*, 60 W. Va. 9, 53 S. E. 769, the following language will be found: "Such conduct and acts by a husband toward his wife, such treatment of her by him, as produces reasonable apprehension in her of personal violence, or produces mental anguish, distress and sorrow, and renders co-habitation miserable, impairing, or likely to impair, the wife's health or mind, is cruel and inhuman treatment authorizing a divorce from bed and board under the Code of 1899, chapter 64, section 6, though there be no personal violence."

In *Roush* v. *Roush*, 90 W. Va. 491, 111 S. E. 334, it was held that in a divorce suit involving cruel or inhuman treatment, the true issue and test is whether under all the facts proved, plaintiff can, with safety to person and health, continue to live with the defendant. See *Cochran* v. *Cochran*, *supra*; *Schutte* v. *Schutte*, 90 W. Va. 787, 111 S. E. 840. In the *Schutte* case, the second point of the syllabus reads as follows: "Disavowals of love, expressions of hatred and the like, while the marital relation continues, do not constitute cruel and inhuman treatment of husband by wife." In *Wills* v. *Wills*, 74 W. Va. 709, 82 S. E. 1092, this court uses the following language: "Uni-

form and continued discourtesy of one spouse to the other, manifested in various ways, such as denial of social intercourse, coolness of manner, disavowal of love, expression of hatred and refusal of company at church and elsewhere, while both reside together, the husband providing support and the wife performing the ordinary household duties, is not alone ground for divorce. Nor is such discourtesy * * * while the marriage relation remains otherwise unimpaired, ground of divorce."

In a suit for divorce where cruel or inhuman treatment is relied upon, the result depends upon the circumstances of each case. See *Smailes* v. *Smailes,* 114 W. Va. 374, 171 S. E. 885; *Kessel* v. *Kessel,* 131 W. Va. 239, 46 S. E. 2d 792; *Persinger* v. *Persinger,* 133 W. Va. 312, 56 S. E. 2d 110.

An exhaustive article as to what acts or conduct constitute cruel or inhuman treatment will be found in 43 W. Va. Law Quarterly, page 298 et seq.

The case of *Goff* v. *Goff, supra,* is cited by the plaintiff to sustain the decree rendered by the trial court. In that case the conduct of the defendant, husband of the plaintiff was reprehensible in many ways. A continued course of discourtesy followed by specific threats, coupled with other reprehensible conduct discussed in the opinion would certainly lead any person to think that the husband's conduct furnished a basis for reasonable apprehension of bodily harm. The record in this case does not show such conduct by the defendant. True, he may have been discourteous in refusing to converse with the plaintiff, in refusing to come to his meals, in refusing to visit the plaintiff at the hospital while she was being treated therein, and, on one occasion, in using profane language towards her. The conduct of the husband shown by this record is not that of a usual husband, but can it be said that the plaintiff had any basis for fear that the defendant would inflict violence upon her? We do not think so. The most that can be said is that the husband is subject to censure for his unseemly conduct toward his spouse. We cannot logically characterize such conduct cruel or inhuman.

In *Arnold* v. *Arnold,* 112 W. Va. 481, 164 S. E. 850, this court followed the principle laid down in *Goff* v. *Goff, supra.* It was held in the Arnold case that the defendant's conduct affected the plaintiff's peace of mind and impaired her health. He was austere in an unusual degree, his sexual demands were excessive and his general demeanor was such as to make her unhappy and miserable. He questioned her sanity. At the taking of testimony, he attempted to have an alienist in attendance to observe her mental reaction while under cross examination. He also kept a diary of every act of the plaintiff which did not meet with his approval. On this state of facts, the trial court decreed the wife a divorce from bed and board. This court modified and affirmed the decree. We are not inclined to extend the principle enunciated in *Goff* v. *Goff, supra,* and *Arnold* v. *Arnold, supra,* to the factual situation in the instant case.

We are of the opinion that the principles laid down in *Wills* v. *Wills, supra,* should be applied even though the husband should have given his wife the utmost kindness and consideration in view of her illness.

In all probability the trouble between the unfortunate parties, resulting in a breakup in their marriage and their home, was caused by the defendant's surliness, the presence of the mother-in-law, and the plaintiff's preoccupation with the duties of her employment. Of course, the main element is the unexplained discourtesy of the defendant to his wife. The other causes named are simply contributory elements.

Considering this case in a light most favorable to the plaintiff's contention, we fail to see where the conduct of the defendant would impair her health, either during the time they cohabitated together, or in the future. The plaintiff failed to allege any other ground for divorce other than cruel or inhuman treatment, and the evidence does not support that ground. This suit for maintenance could not be maintained and should have been dismissed.

The decree of the court settling the property rights of

the defendant and the plaintiff and allowing plaintiff the sum of $3359.84 should not have been rendered. Even if the plaintiff had established grounds for separate maintenance, the statute requires that alimony and separate maintenance be decreed to the wife "out of the husband's earnings and income as the court may determine, considering the circumstances of the parties and their stations in life * * *." Code, 48-2-29, as amended. "The statute requires the circuit court to decree alimony and maintenance out of the earnings and income of the husband. It does not authorize the court to take or transfer by its decree any of his other property". *Wolford* v. *Wolford, supra.*

The decree for the sum of $3359.84 was not made for separate maintenance but was a settlement of property rights. When it is considered that the plaintiff voluntarily conveyed her interest to the defendant before she separated from him, that conveyance is presumed to have been a gift, and thereafter, plaintiff had no interest in that property other than her interest as defendant's spouse. See *Finance Co.* v. *Leedy,* 112 W. Va. 17, 163 S. E. 626; *Boyd* v. *Boyd,* 109 W. Va. 766, 155 S. E. 303; *Spradling* v. *Spradling,* 118 W. Va. 308, 190 S. E. 537.

We do not express any opinion whether the property rights of the plaintiff and defendant may be settled in a suit for separate maintenance, though the statute, Code, 48-2-29, as amended, provides for the protection of the wife's property rights.

Being of the opinion that the findings of fact made by the trial chancellor and the commissioner are contrary to the plain preponderance of the evidence, the decree based thereon is reversed. *Kincaid* v. *Evans,* 106 W. Va. 605, 146 S. E. 620.

Accordingly, the decree of the circuit court of Harrison County is reversed and this cause is dismissed.

*Reversed and dismissed.*