# WHEELING.

## BURK v. BURK.

Submitted June 20, 1882—Decided April 7, 1883.

(*WOODS, JUDGE, Absent.)

1. Desertion is a breach of matrimonial duty, and is composed first, of the breaking off of the matrimonial cohabitation; and second, an intent to desert in the mind of the offender. Both must combine to make the desertion complete. (p. 450.)

2. If a wife leaves her husband's home with the intention at the time of returning, and stays a considerable time from home, and her husband requests her return, which she refuses, from that time she deserts her husband. (p. 450.)

*Cause submitted before Judge W. took his seat on the bench.

3. The intent to desert being once shown is presumed to continue, until the contrary appears. (p. 450.)

4. If a husband, without an offer on the wife's part to return and live with him at his own residence, consent to take her to his own premises in a house near his residence, without a demand that she shall live in his house with him, and there visits her as her husband, the desertion is broken. (p. 450.)

5. If a husband changes his residence, his wife's residence is changed also, and if without a legal excuse she refuses to go with him, it is desertion on her part. (p. 451.)

6. Desertion to be ground of divorce from the bond of matrimony must continue three years. It must be a continuous, unbroken desertion. Two periods of desertion cannot be added together for the purpose of making up the term required by the statute. (p. 452 )

7. Desertion cannot be inferred from the mere fact, that the parties do not live together. (p. 452.)

8. Although the husband gives his wife only a meagre or no support, denies her much of his society ; puts her in a house separate from his ordinary residence, because she refuses to live at his residence and yet does not break off the matrimonial cohabitation, there can not be said to be any desertion by either. (p. 453.)

9. If during the three years required by the statute for a divorce from the bonds of matrimony, on the ground of desertion, the husband cohabits with his wife, the desertion is broken. (p. 453.)

Appeal from a decree of the circuit court of the county of Wood, rendered on the 3d day of May, 1881, in a chancery cause in said court then pending, wherein Robert H. Burk was plaintiff, and Lucinda Burk was defendant, allowed upon the petition of said defendant.

Hon. James M. Jackson, judge of the fifth judicial circuit, rendered the decree appealed from.

JOHNSON, PRESIDENT, furnishes the following statement of the case:

This is a suit in equity to procure a divorce *a vinculo matrimonii*, on account of desertion for three years. The bill was filed in the circuit court of Wood county in June, 1880. It alleges, that plaintiff and defendant were married in April, 1864; that shortly after his marriage with the defendant,

Lucinda Hunter, she abandoned him and went to live with her friends; that he had frequently solicited her to return to his home, but she had at all times refused; that afterwards she so modified the spirit of abandonment as to remove into a house on complainant's land, but refused to live with him in his home; that her desertion of him was commenced and continued against his consent; that she had for more than five years, "intentionally, maliciously and absolutely deserted and abandoned your orator, and compelled him to live without her consort, or assistance, which he was entitled to have as her husband from his wife, and that for more than said period of five years she has utterly failed and refused to perform her marital duties towards your orator, as his wife is required by the laws of the land to do, and she has repeatedly declared to your orator her firm, settled and determined purpose never to return to your orator's house, or to resume her duties, or in anywise to conduct herself as the wife of your orator. On the contrary she has pretended, that she would only abide with your orator upon condition, that your orator would go and live at another place than his own house and home, and would abandon his house and home." The bill also alleges, that they have three children by the marriage, and prays for a divorce from the bonds of matrimony, and for the custody of the infant children.

The defendant answered the bill denying the charge of desertion, and denying, that any offers to receive her into his house had ever been made, except through plaintiff's attorney, a short time before the institution of the suit. She avers, that he cruelly drove her from his home more than fourteen years before, and had never offered to receive her back, except conditionally, by a cold and heartless message sent to her by his attorney as aforesaid; that when she married plaintiff she was living with an old maiden aunt, Mary Hunter, and, that before the marriage plaintiff promised her, that this old aunt, with whom she had lived, when her mother was alive, and also since the mother's death, should live with them; that aunt was old, and would have been alone unless she accompanied them; that plaintiff did take her aunt with her to his own home, but in about eighteen months thereafter drove her off; that defendant protested,

reminding him of his promise, but he drove them both from his home, and that they then went back to their former home, where they remained for nearly two years, when plaintiff moved them into a house on a place where he then lived, near his own house, at which she and her aunt lived. For a year before this last move, plaintiff visited her as her husband, coming and going as he pleased. She lived near his house, after being moved back, for about six years; during all this time she did his washing and mending, and in all things discharged her duty as a good and faithful wife. He came frequently to see her, staying sometimes for a day or two, and often remaining over night, they cohabiting as man and wife; she often went to his house, and did whatever work was necessary to be done.

He sold the place where they then lived, and bought another farm, to which farm said plaintiff himself moved respondent and her aunt. They lived in a house on this new farm, a few hundred yards from his own residence. At this place she remained, and was there when the answer was filed. At this place plaintiff and respondent cohabited as man and wife; plaintiff often staying with respondent in this house a week at a time, "and until recently, before instituting his suit against her, he has divided his time day and night between the house he calls his home, and the house, in which respondent lived."

A short time before the institution of this suit, and shortly after plaintiff's attorney had served on her a notice to come to the house, in which plaintiff lived, the plaintiff served notice on Miss Hunter to vacate the house, in which she and respondent lived. She further says, that she has just gone where he told her to go, and has done everything he desired her to do. She denies that he is entitled to the custody of the children. She asks in her answer by way of affirmative relief, a divorce from bed and board from complainant, with alimony, on the ground of desertion from her, and cruelty and neglect. But I am of opinion, that as the plaintiff denies these charges in his replication, and as they are not sustained by proof, it is necessary to set out the grounds more specifically, although evidence was taken, which will be hereafter commented upon.

On the 3d day of May, 1881, the court, upon the hearing, entered a decree dissolving the bonds of matrimony; leaving the children for the present in the custody of the defendant, reserving the right upon petition to make any further decree as to them, which might be necessary, and also reserving the right to the defendant to apply to the court, at any future time, for such relief as she might show herself entitled to; and each party was ordered to pay his and her own costs. From this decree the defendant appealed.

*Loomis & Tavenner* for appellant cite the following authorities: Code, ch. 64 § 5; 21 Gratt. 43; 22 Gratt. 168; 30 Gratt. 307; 1 Bishop Marr. and Div. (5th Ed.) §§ 775, 778; 4 Rand. 662; 4 H. & M. 507; 1 Bishop Marr. and Div. § 568; *Id.* §§ 569, 571, 787; 2 Bishop Marr. and Div. 350 *et seq.*

*John A. Hutchinson* for appellee cites the following authorities: 4 Paige 432; 32 Miss. 279; 19 Ill. 334; 27 Ind. 186; 25 Vt. 678; 1 Dev. (N. C.) Eq. 352; 4 Barb. 217; 6 Tex. 3; 7 Tex. 538; 100 Mass. 150; 34 Ark. 37; 52 Ind. 553; 44 Ala. 437; 41 Ga. 46; 27 Wis. 252; 73 Ill. 497; 31 N. J. Eq. 225; Mo. App. 572; 8 Oregon 224; 87 Ill. 250; 29 N. J. Eq. 96; 2 Bishop Marr. and Div. § 655 a; 1 Bishop Marr. and Div. § 773; *Id.* § 788 and notes; *Id.* § 754; 1 Bishop Marr. Women § 45; 1 Bishop Marr. and Div. § 786 and cases cited; 32 N. J. Eq. 231; 21 Gratt. 43 to 47; 30 Gratt. 307; 31 Gratt. 13; 103 Mass. 577; 2 Beas. (N. J.) 38; 4 Allen 39; 1 Hoff. 47; 2 Bishop Marr. and Div. § 672; 1 Bishop Marr. and Div. § 799; *Id.* § 810.

JOHNSON, PRESIDENT, announced the opinion of the Court:

This will be the first reported divorce case in this State. We would gladly wish, that it might be the last. The bonds of matrimony should never be dissolved unless for the most cogent legal reasons made clearly to appear to the court. Of course when such reasons do appear, painful as it is to pronounce a decree dissolving the marriage, the law must be enforced. One of the grounds for divorce from the bond of matrimony, as declared in our Code, chapter 64, section 5,

is, "where either party willfully abandons or deserts the other for three years."

That is desertion, for which a divorce will be granted. It is a breach of matrimonial duty, and is composed first, of the breaking of the matrimonal cohabitation, and secondly, ot the intent to desert in the mind of the offender; both must combine to make the desertion complete. *Bailey* v. *Bailey*, 21 Gratt. 43; *Latham* v. *Latham*, 30 Gratt. 307.

It is a question of some doubt from the depositions in this cause, whether the defendant in the first instance deserted the plaintiff, or whether the plaintiff drove her from his home, and thus deserted her. The plaintiff and his two sons by a former marriage, in their depositions say, that the plaintiff ordered Miss Mary Hunter to leave the house, and that the defendant, against the protest of the plaintiff left with her. On the other hand the defendant and Miss Hunter are just as positive in their depositions, that plaintiff ordered Miss Hunter to leave, and when Mrs. Burk protested, and reminded plaintiff of his promise, that Miss Hunter should live with them, that he then ordered his wife to leave too. It is very evident from the evidence, that the plaintiff's dislike to Miss Hunter, and his ordering her from his house was the whole cause of the trouble. It is shown to the satisfaction of my mind, that the plaintiff did promise his wife, before he married her, that her old aunt should have a home with them. No satistactory reason is shown for plaintiff's harshness to this old lady, and if he had had any adequate respect for his wife's attachment to her old aunt, he would not have acted in this unseemly manner. In this act he certainly did not show any affection for his wife. But even this conduct would not justify a desertion on the part of the wife. Her duty was to her husband, before her aunt. The weight ot the evidence shows, that she did on that first occasion desert her husband. But even if she did not, the weight of the evidence shows, that in 1867 the plaintiff, through Rev. Mr. Nourse and others, asked her in good faith to return, which she refused to do. If she had not deserted him before, the desertion would have dated from that time. 1 Bish. M. & D. sec. 786 and cases cited; *Trall* v. *Trall*, 32 N. J. Eq. 231. The intent to desert being once shown, is presumed to con-

tinue until the contrary appears.   *Bailey* v. *Bailey*, 21 Gratt. 43.

Is there anything in this record, which shows, that the intent to desert was abandoned?   The conduct of the parties will have much influence in determining this question.   Mrs. Burk swears, that in about a year after she left her husband's house, he visited her and they cohabited together as man and wife; and that in about two years thereafter, the plaintiff, Burk, came with his own teams and moved Mrs. Burk, her children and aunt Mary, and their household goods to a house within a few hundred yards of the house, in which plaintiff lived, where for a number of years they resided; Mr. Burk, visiting her as he pleased, staying with her at night as her husband, and resuming the matrimonial cohabitation.   Mrs. Burk testifies, that he did not ask her to go into his house where he lived; he says he did.

It is very evident from the circumstances and the conduct of the parties, that this arrangement was a compromise between them; because the plaintiff would have been under no legal obligation to bring his wife back to his own premises, had she without cause deserted him, and persisted in such desertion.   From this place when plaintiff had sold it, his wife uniting in the deed, he removed her and her children, and Miss Hunter to another place, which he had bought a few miles distant from where they lived, in a log house on said place, near his own residence.   Again the plaintiff kept up his visits to his wife, staying with her at night as he wished, and cohabiting with her, and this state of things continued until the spring of 1880, when he sent the demand to her, through his counsel, that she should move into the house with him; and about the same time he sent a notice to the old lady, Miss Hunter, to vacate the premises. This terminated the arrangement to have her live away from his residence, even on his premises; an arrangement, which had evidently been made and adhered to for about ten years. This he had a right to do, and if his wife declined to go without a legal excuse, it would be desertion on her part from that time.   When the husband changes his matrimonial home, the wife must go with him, and if she refuses without a legal excuse she deserts him.   This demand was

made on the wife, a few months only before this suit was brought. It was the wife's duty to obey him, and to go into his own 'residence, and we do not see in the record a legal excuse for her not doing so. It is her duty now to offer in good faith to live with him, in the residence he has chosen, and if he refuses to receive her, from that moment it will be desertion in him. But the desertion to be ground of divorce from the bond of matrimony must *continue* three years. It must be a continuous, unbroken desertion. Two periods of desertion cannot be added together for the purpose of making up the term required by the statute. *Gaillard* v. *Gaillard*, 23 Miss. 152. Desertion cannot be inferred from the mere unaided fact, that the parties do not live together. *Jennings* v. *Jennings*, 2 Beasley 38.

The evidence in this case shows very clearly, that for more than ten years before the institution of this suit, the plaintiff had two residences on his premises, in one of which his children by his former wife lived, and in the other his wife and children ; and the husband and father divided his time between the two. As before stated he had the right to break up this arrangement whenever he chose, and when he did, his wife must go with him to the other residence, or to whatever place he might make his home. But while the arrangement continued, is it not absurd to say, that there could under such circumstances be any desertion by the wife ?

It has been held, that actual abandonment of matrimonial cohabitation, without reasonable cause, for the statutory period, intentional on the part of the wife, is cause for divorce, notwithstanding the fact, that she make occasional visits to the house of her husband to look after her children, and while there, engage in domestic duties, but while there occupied a different room from her husband. *Rie* v. *Rie*, 34 Ark. 37. In Kentucky it was held, the right of the wife to obtain a divorce, will not be impaired by an offer made by the husband a short time before the lapse of two years to make provision for her support, unless it is accompanied with an offer to receive and acknowledge her as his wife. 2 Litt. 338

In Massachusetts it was held, that proof that a husband

intentionally and against his wife's consent abandoned for
five consecutive years all matrimonial intercourse and com-
panionship with her, and denied her the protection of his
home, will sustain her libel for divorce from the bond of
matrimony, on the ground of desertion; and it is immaterial,
that during that period he has regularly contributed money,
and from time to time necessaries towards supporting his
wife and children.  *Magrath* v. *Magrath,* 103 Mass. 577.

In *Yeatman* v. *Yeatman,* Law Rep. 1 P. & D. 491, the judge
ordinary said:  "A wife is entitled to her husband's society
and the protection of his name and home, in cohabitation.
The permanent denial of those rights may be aggravated by
leaving her destitute, or mitigated by a liberal provision for
her support; but if the cohabitation is put an end to,
against the consent of the wife and without the intent of
renewing it, the matrimonial offense of 'desertion' is in
my judgment complete."    It is also true, that although
the husband gives his wife only a meager or no support,
denies her much of his society, puts her in a house separate
from his ordinary residence, because she refuses to live at
his residence, and yet does not break off the matrimonial
cohabitation, neither can be said to have deserted the other.
As is said in *Latham* v. *Latham,* 30 Gratt., to constitute " de-
sertion" within the meaning of the statute, there must be a
combination of two things: an intention to desert, and an
actual breaking off of the matrimonial cohabitation.    The
matrimonial cohabition cannot be broken off by the mere
fact of living in separate houses, while the husband con-
stantly or at any time occupies the marriage-bed.    If such a
thing could for a moment be tolerated, then a man would
have a legal warrant for the space of three years to make
his wife his mere mistress, an act as shocking to the law as
it is to morality and religion.

In an anonymous case 6 Mass. 147, Parsons C. J. said:
"It would be injustice to the wife, and immoral in the hus-
band to claim and enjoy as his peculiar marital rights, the
society of his wife, after a knowledge of her offense, and
afterwards to cast her off for that same offense."

This plaintiff occupies a very unenviable position as shown
by the record.   Within the greater part of the statutory

period of three years, prior to the institution of this suit, it is clearly and conclusively shown, that he continued to have intercourse with his wife; he admits it himself in his deposition, in which he says in answer to a question, "That from the time that she came there, or rather from about a year after she came back to the Ford farm, I tried to provide for her and the children; and at times I have eaten at her table, and for a while she gave her consent, that she would bed with me at her own house, which invitation I accepted hoping in the course of time, that she would come home and that we would live as man and wife. *Not quite a year ago she said, that should stop forever.*" Was the stopping of that privilege the cause of this suit? And did he hope to convince the court, that notwithstanding the fact, that matrimonial cohabitation had not been broken off one year, that he could procure a divorce on the ground, that his wife had deserted him for *three* consecutive years? If he honestly claimed, that three years before he brought this suit his wife was a deserter from his home, and that the time was running, which would give him a right to a divorce, and during that time he was cohabiting with her, from his stand point he was making her his mistress, nothing more. Could anything be more unjust to the wife or more immoral in such a husband?

There is a case, *Kennedy* v. *Kennedy*, 87 Ill. 250, in which it was held, that where a wife refused to go with her husband to a new home acquired by him, and without cause or justification deserted him for more than two years, that the fact of the husband's cohabiting with her at her brother's house on one occasion within the two years, when she still refused to go and live with him, did not have the effect to bar him of the right to a divorce. This is the only case so far as I know, in which such doctrine is held. We cannot approve it; we think it wrong in principle, and decidedly dangerous to good morals in its tendency. There was however only one instance of cohabitation within two years. Here the cohabitation was continuous, for more than two of the three years required.

This record shows no legal ground for a divorce. The decree of the circuit court is reversed with costs to the appellant; and this Court proceeding to pronounce such decree as

the circuit court should have rendered, the plaintiff's bill is dismissed with costs.

Judges Green and Snyder Concurred.

Decree Reversed. Bill Dismissed.

# WHEELING.

