# CHARLESTON.

## TILLIS v. TILLIS.

Submitted February 9, 1904—Decided March 1, 1904.

1. DIVORCE—*Desertion.*

   It requires willful desertion to warrant a divorce from the bond of matrimony. Willful desertion is a breach of matrimonial duty, and is composed, first, of a breaking off of matrimonial cohabitation; and, second, an intent in the mind to desert. Both must combine to make the desertion complete. Non-cohabitation alone is not desertion. (p. 198),

2. DIVORCE—*Plaintiff.*

   To authorize a divorce for willful desertion the plaintiff bears the burden of proof, and the evidence of such desertion must be full and clear. (p. 199).

3. DIVORCE—*Competent Evidence.*

   Whether admissions are competent evidence on which to ground a divorce, or not, they are competent evidence to defeat a divorce. (p. 201).

Appeal from Circuit Court, Mason County.

Bill by Smith Tillis against Mary A. D. Tillis. Decree for plaintiff, and defendant appeals.

*Reversed.*

W. A. PARSONS, HOGG & KERWOOD, and W. M. DUFFY, for appellant.

J. E. BELLER, for appellee.

BRANNON JUDGE:

This is an appeal from a decree of the circuit court of Mason County granting an absolute divorce to Smith Tillis from his wife, Mary A. D. Tillis, upon a bill filed by him charging her with abandonment, from which decree she has appealed.

It is at once enough to reverse the decree to say that the evidence fails to show a material element, that is, willful abandonment. It is of the very core of such a case to show, not merely that the wife went away from home, as that is only one element or circumstance of the case, but it must be shown that she ceased cohabitation with willful design and intent to desert her hus-

band. Both facts must be shown. Willful desertion cannot be inferred from the fact that the parties do not live together. Mere cessation of cohabitation is not enough. *Burk* v. *Burk,* 21 W. Va. 445. The words of the Code, chapter 64, section 5, giving this cause of divorce give it "where either party willfully abandons or deserts the other for three years." This shows there must be the intent to finally desert. I may fairly say that the plaintiff's case rests only on his own evidence, and that is too short.

He says that they lived together in Mason County, but had not lived together for four years, and being asked why, he answered: "Because I considered it an utter impossibility on account of the disposition and temper of the woman to live together agreeably." The question was then propounded, "Do I understand by your answer that she has abandoned and deserted you?" He answered, "Yes, sir. She left Mason County in November, 1898, and moved her goods and chattels to Jackson County."

Now, this shows rather, from his own lips, that he abandoned her, than that she abandoned him. At any rate it utterly fails to show willful, intentional abandonment, giving it the most favorable construction for the plaintiff. His evidence shows merely his assertion that his wife had abandoned him, his mere opinion of the character of her actions, without facts or circumstances to explain why she went to Jackson County or give cast to her act in so doing. Why she left he does not say, nor for what cause. Perhaps his wrong caused her to leave. He ought to show that she did wrong in leaving, and make her act unjustifiable and vindicate himself from blame. His failure as a witness to do so is significant. There is absolutely no evidence given by the plaintiff to show willful design to desert. His case signally fails to show this cardinal element. It does show that she left home and moved to Jackson County and there resided; it does show a cessation of matrimonial cohabitation, but willful abandonment is not shown, and that is the very cause on which alone the statute grants the divorce. The law and moral and religious sentiment of the country do not favor divorce, and as JUDGE JOHNSON said in *Burk* v. *Burk,* "The bonds of matrimony should never be dissolved, unless for the most cogent legal reasons made clearly to appear." Full proof is required. 2 Bishop

on Marriage, Divorce and Separation, section 762. Turning to the evidence of the defendant, she swears that when she was sick and was merely able to sit up when helped to a chair, her husband told her that he was going to Sayre's after his son to get him back in school, leaving her with not over a gallon of flour and not over two gallons of meal, and some eight or ten bushels of corn in the ear, and without a bit of lamp oil for light, and when she could not wait on herself. He said he was coming back as soon as he could get back, but she says he never returned again, and refused to live with her or support her. He admits that he lived with his son-in-law. She says that there was never any trouble between them. She swears that in about three weeks after he left her, she went to him at Bud Conley's and cried and begged him to come back and live with her, and told him that if she had said or done anything wrong she begged him to forgive her and come back, and that he told her she had never said or done anything that was hard. He said that "he had left and that was all that there was of it, that he left just because he left." She says he refused all support to her. This is the woman's version under oath, and if it comes from an interested party, I respond that her version is entitled to as much credit as is his, and the burden is on him to prove his case. And it is here very important to say that he never went upon the stand to deny her statement. A son of hers by a former marriage was present at this interview, and swears that she asked him if she or her children had said anything causing him to leave, and he said no; and she asked him why he left, and he said just because he wanted to leave. The son swears that he asked Tillis to come back, and that he declared that he never intended to do so, and that he told the son to take his mother away. The son swears that his mother was clinging to her husband, and that her husband shoved her away, got on his horse and ran his horse nearly to the top of the hill, the woman following him part of the way, and fell in the road under her excitement, and that Mrs. Conley helped to take her home. H. E. Greer swears that he met Tillis in the road shortly after Tillis left his wife, and he told Tillis that he had heard that Tillis had left his wife, and said to him that he thought he had done wrong, and had better go back, and that he had left the woman in bad shape and circumstances, and Tillis said he had

left with the intention of not going back, and would not go back. Mrs. Rhesa Greer, a school teacher, swears that Mrs. Tillis sent for her and requested her to write a letter to her husband requesting him to come back home, and she wrote the letter. Another witness swears that Tillis stated to him that he had no grounds on which to bring a suit for divorce, and requested the witness to go to see his wife and get her to apply for a divorce, and said that he, Tillis, would bear her expenses and pay all the cost, and that he would make a statement before the court that he would not live with or support her, and that that would get a divorce. Tillis came back on the witness stand to meet this evidence of Nicholas King. At first he denied King's evidence, but on cross-examination, while denying such conversation at the two points named by King, he admitted an important fact in these words: "I did tell Nicholas King that if she would go ahead and apply for a divorce that I would pay the expenses, but I did not tell him I knew I had no grounds." Thus, it is clearly proven that Tillis wanted a divorce, and clearly proven that he abandoned his wife. The evidence clearly shows that he abandoned his wife. Admissions from his own lips clearly prove it. Whatever constructions may be properly put on the language in section 8, chapter 64 of the Code, that "the cause shall be heard independently of the admissions of either party in the pleading or otherwise"; whatever we may think of the correctness of the case of *Bailey* v. *Bailey,* 21 Grat. 43, holding that said statute does not render admissions, except by collusion, incompetent evidence on which to obtain a divorce, we cannot question their admissibility as evidence to defeat a divorce. "In a suit for divorce the admissions of the plaintiff are competent evidence to support the averments of the answer." *Cralle* v. *Cralle,* 79 Va. 182. It is plain that we must reverse the decree and dismiss the bill.

*Reversed.*