# CHARLESTON.

GEORGE SCHUTTE v. HENRIETTA SCHUTTE

Submitted April 11, 1922. Decided April 18, 1922.

1. DIVORCE—*To Justify Decree for Cruelty Generally Requires Evidence of Personal Violence.*

   To justify a decree of divorce on the ground of cruel and inhuman treatment generally requires evidence of personal

violence or other acts tending to break down the health and happiness of the offended spouse. (p. 789).

2. SAME—*Disavowals of Love and Expressions of Hatred Do Not Constitute Cruelty.*

Disavowals of love, expressions of hatred and the like, while the marital relation continues, do not constitute cruel and inhuman treatment of husband by wife. (p. 790).

3. SAME—*Burden Rests on Party Alleging Adultery to Prove Case by Strong Convincing Evidence.*

In suits for divorce based on alleged adultery of defendant, the burden rests upon plaintiff to make out his or her case by clear, strong and convincing evidence, sufficient to convince the judicial mind affirmatively. Evidence to raise a suspicion only will not justify a decree of separation. (p. 790).

4. SAME—*Evidence Held Not to Sustain Charges of Adultery and Cruelty.*

The charges and counter charges of adultery and of cruel and inhuman treatment in this case held not sustained by such sufficient and convincing proof as to justify reversal of the decree below denying to each of the parties a decree of divorce. (p. 793).

Appeal from Circuit Court, Harrison County.

Action by George Schutte against Henrietta Schutte for divorce, in which defendant brought a cross-bill. From a judgment denying both parties relief, the plaintiff appeals.

*Affirmed.*

*Law & McCue* and *H. J. James,* for appellant.
*Carter & Sheets* and *Glenn F. Williams,* for appellee.

MILLER, JUDGE:

By bill and cross-bill answer each of the parties is seeking a divorce from the other; the plaintiff on the grounds, (1) of alleged cruel and inhuman treatment of the defendant toward him, (2) of adultery alleged against defendant; while the grounds upon which defendant predicates her prayer for affirmative relief against the plaintiff are, (1) desertion, (2) cruel and inhuman treatment, (3) the counter charge of adultery by him. Each of the parties in their respective

pleadings names a particular person with whom the other is alleged to have committed adultery.

The defendant denies in her answer all charges of cruel and inhuman treatment, and all acts of adultery charged against her.    Plaintiff filed no answer to the cross-bill of defendant.    The case was tried by the court upon the pleadings and the documentary and oral evidence of the witnesses adduced by both parties, resulting in the decree complained of by both, denying to them the relief prayed for, or any relief, and dismissing the bill and cross-bill with costs to the defendant against the plaintiff.

The only specific act of cruel and inhuman treatment alleged and sought to be proven by plaintiff consisted of a warrant of arrest procured by defendant January 15, 1920, upon a charge of lunacy against him, which upon investigation and consideration by the lunacy commission of Harrison County was sustained; and that subsequently, upon a writ of habeas corpus sued out by him against defendant Henry M. Schutte, custodian, discharge from custody was denied him by the circuit court; but which judgment was reversed here upon writ of error on September 20, 1920, and the plaintiff discharged and restored to his liberty. 86 W. Va. 701.    The only other acts of bad treatment consisted of supposed alleged expressions of disrespect for plaintiff, lack of love for him and love for another, developing into acts of notorious conduct pointing to acts of adultery on the part of defendant with the corespondent, which are alleged to have become unbearable by plaintiff.

The charge of adultery is predicated on various acts of misconduct of defendant with one Samms within three years prior to the institution of the suit.    No specific acts are set out or pleaded in the bill.

Defendant in her answer denies the cruel and inhuman treatment, either in connection with said lunacy charge or in any other manner.    The facts relating to the accusation of lunacy sufficiently appear perhaps from the record and opinion in the proceeding already referred to. The record and the evidence adduced before the court in the present case clearly show that the former proceedings were begun

only after consultation by both plaintiff and defendant with eminent and qualified physicians, and conduct on plaintiff's part tending to show aberration of mind or an abnormal mental condition, and the fear of defendant, expressed at least, that she was liable to sustain some bodily harm at his hands.   While we were of opinion on the hearing of the habeas corpus proceedings that the mental condition of petitioner was not shown to be such as ought to deprive him of · his liberty and of his property taken into custody, and that he ought to be discharged, yet under the circumstances there disclosed and here proven, we can not say that they convicted defendant of cruel and inhuman treatment sufficient to furnish grounds for a decree of divorce.   The record shows she did not bring these proceedings hastily, but only after observing plaintiff's strange and unusual conduct, his threats of violence, and after consultation with competent nad reputable physicians.   It was the opinion of the circuit court, and it is our opinion that cruel and inhuman treatment is not made out by the record of the lunacy proceedings. Nor do we think the accusations of disrespect as charged have substantial foundation in the evidence.   The defendant denies them, and we can not say the decree below, predicated on the want of evidence to sustain them, is wrong.   To justify a divorce on the ground of cruel and inhuman treatment generally requires evidence of personal violence or other acts tending to break down the health and happiness of the offended spouse.   Section 6, chapter 64, Code.

We have distinctly held that disavowals of love, expressions of hatred and the like, while the marital relation continues, do not constitute cruel and inhuman treatment of the husband by the wife.   *Huff* v. *Huff*, 73 W. Va. 330; *Wills* v. *Wills*, 74 W. Va. 709. By the Code the false charges of prostitution by the husband against his wife amounts to cruelty on his part.

On the only other accusation, that of adultery with said Samms, we are not justified, we think, in reversing the decree below on this ground.   Outside of the numerous instances testified to by witnesses, where defendant and Samms were seen riding together in an automobile of the one or the

other on the public roads or streets in and about the city of Clarksburg, only three or four instances are given where they are charged with having been seen together in rather secluded places and along the public highways, but where, it is contended, the opportunity to commit adultery was furnished.    In one instance three witnesses testify to having seen them together in the Masonic Cemetery near Clarksburg in the act of hugging and kissing each other, showing lascivious conduct and a disposition to commit adultery if opportunity was furnished.    It is not pretended by these witnesses that they saw anything more on this occasion than acts of lasciviousness; they do not pretend they saw the parties in the act of adultery, nor that any opporunity was there present for such criminal conversation.    Another matter of evidence relied on, testified to by a motorman on the electric railway, is that he saw defendant and Samms enter a field on an afternoon and go in the direction of a woods, and that on his return trip he saw two persons, not definitely identified as the same persons, with heads and shoulders above a fallen tree at the edge of the woods, but outside of this he saw nothing improper in their conduct. A third fact testified to by two other witnesses for plaintiff is that they saw Samms and defendant at the Green Lawn Cemetery near Adamston, one of whom says he saw them go through a fence towards a small woods.    They were not seen going into the woods by either witness, but going in that direction. This was supposed to have been in the summer of 1919, the latter part of June.    The three witnesses who swear to seeing the parties in the other cemetery place the time in the latter part of May of the same year.    Another witness testified that he saw Samms, in June 1919, get out of his car in front of the Schutte residence and go directly into the house, and sometime afterwards on repassing saw him come out of a side door, and sit on the front porch.    He does not pretend to have seen Mrs. Schutte on this occasion.    Samms and Mrs. Schutte both emphatically deny that they were ever at any time or at the times and places designated by the witnesses together in either of the cemeteries or in the field referred to by the motorman. They also deny that he

was ever at her home, at the times indicated by the witnesses, or at any time except when Samms was there with his wife, who had heard of some of the charges made against him and Mrs. Schutte, which they claim was the result of false reports circulated by the plaintiff's witness Skinner, and which Skinner says he afterwards admitted in the presence of Mrs. Samms were false, but which, in his testimony in the present case, he lied about to Mrs. Samms; counsel for plaintiff say, "like a gentleman." Samms and Mrs. Schutte were members of the same church, both in good standing and reputation; he president of the men's Bible class; she president of the women's Bible class. They were also near neighbors, and members of the two families frequently rode together from Adamston where they resided to Clarksburg and return, as other neighbors living in the same neighborhood did; and frequently when the death of neighbors occurred, they volunteered the use of their respective automobiles to carry relatives and friends of the deceased to and from the cemetery, but at no time were they ever there alone; and Mrs. Schutte swears that as soon as she learned of the criticisms against her, she ceased to ride with Samms and he with her. Mrs. Schutte is corroborated, to some extent at least, by female witnesses who roomed at her house while plaintiff was absent in the South in 1919, that Samms was not at her house during that time except in company with Mrs. Samms. One of these says she saw Samms' car parked in front of Mrs. Schutte's residence, on one occasion, when he was calling on a customer at a store on the opposite side of the street.

Of course, if the facts are as sworn to by plaintiff's witnesses relating to the presence of Mrs. Schutte and Samms in the cemeteries, and in the woods on the opposite side of the field as sworn to by the motorman, they were guilty of very unbecoming conduct. But no witness swears to any act of adultery on their part. The court below evidently concluded that the fact of adultery was not established. Is the evidence such as to justify us in reversing the decree? We do not think it is. The burden is upon the plaintiff in this class of cases, as in all others, to make out a clear case of

adultery when that is the ground relied on.    The proof in this case is little if any stronger, we think, than was the evidence of adultery in *Huff* v. *Huff, supra,* which we held insufficient to justify a decree on that ground.  It was not of that clear and strong character sufficient to convince the judicial mind affirmatively.    It may be sufficient to raise a suspicion as to defendant's chastity, but that is not enough to justify a decree, according to our cases.    The facts in the Virginia case of *Musick* v. *Musick,* 88 Va. 12, which were held sufficient to justify a decree on the ground of adultery will be found much more convincing than the facts proven in this case.    In the case of *Throckmorton* v. *Throckmorton,* 86 Va. 768, the court laid down the rule that, "to establish the charge of adultery the evidence must be full and satisfactory—the judicial mind must be convinced affirmatively. The proof should be strict, satisfactory and conclusive." Courts of equity are reluctant to convict husband or wife of unfaithfulness who for many years have lived together happily and maintained good reputations in the community, and they should not do so except upon the clearest and most convincing proof; and we are not prepared in this case to reverse the decree below denying plaintiff    relief on the ground of adultery charged.

But should the lower court have awarded defendant a divorce *a vinculo* or *a mensa et thoro* against plaintiff?  Having failed to make out a clear case of adultery against her, the statute, if his charges amounted to that of prostitution, would give her a divorce on the ground of cruel and inhuman treatment.    But the charge is not that of prostitution, but of adultery.    To be a prostitute means for a woman to give herself up to indiscriminate lewdness, to become a base hireling.    Adultery is a crime of less gravity at common law and under the statute.    *Ex parte Richards,* 53 W. Va. 555. And so the statute does not in terms, nor likely by implication, include adultery in the word "prostitution," a question, however, not necessary nor intended to be decided. Plaintiff may have felt justified in making the charge in his bill, in view of the many reports testified to by the witnesses. There is considerable evidence, however, tending to show

that plaintiff with chalk wrote on the side of a building in a public place words commending himself, but accusing his wife of being a "whore." He admits seeing these words but says he immediately rubbed them out with his handkerchief. A young lady witness for defendant says she saw the writing, and undertook to identify the handwriting as his, after seeing his letters to his wife and observing the misspelling of the same word or words. However he flatly disclaims responsibility for the sign, and says he undertook to blot it out as soon as he discovered it. One or two witnesses swear to plaintiff's threats in connection with this publication to ruin the reputation of his wife, to shield his own unbecoming conduct towards a lady roomer in his house, with which he is charged. On first impression a majority of us were inclined to say that defendant was entitled to a decree of divorce against plaintiff on the ground of cruel and inhuman treatment. But as he so flatly denies the charge, and in view of the uncertainty, we have concluded the decree below denying her a divorce ought also to be affirmed.

*Affirmed.*