ELIZABETH PEARL CHRISTOPHER

*v.*

EVERETT GRANT CHRISTOPHER

(No. 11058)

Submitted September 15, 1959. Decided October 20, 1959.

*A. Blake Billingslea, Charles H. Brown,* for appellant.

James T. Dailey, Jr., Clark B. Frame, for appellee.

GIVEN, PRESIDENT:

Plaintiff, Elizabeth Pearl Christopher, instituted her suit for separate maintenance against Everett Grant Christopher, in the Circuit Court of Preston County, alleging that the separation occurred on the eleventh day of February, 1958, as the result of cruel and inhuman treatment of plaintiff by her husband, and praying custody of the one child born to their marriage, August 31, 1955, Sharon Yvonne Christopher. Defendant filed an answer denying any cruel or inhuman treatment and alleging that plaintiff deserted their home without just cause or provocation. After receiving testimony offered by the parties, the trial court found and decreed separate maintenance to the wife, granted her custody of the child, and the monthly sum of $140.00 for her separate maintenance and for support of the child.

The bill of complaint, after alleging cruel and inhuman treatment in general terms, specifically alleged that on the "1st day of February, 1958, in the parties' residence

in Kingwood, West Virginia, the Defendant violently and without provocation assaulted and struck your Plaintiff on and about her head and body, and knocked your Plaintiff against an electric range and refrigerator, and onto the floor, and that your Plaintiff received, at the hands of the said Defendant, bruises on or about her head, arms and other parts of her body; that at the time and place aforesaid, the Defendant in the presence of your Plaintiff used vile and obscene language, and that your Plaintiff was then and there forced to run from the parties' said home and seek the assistance of a neighbor, and that it was thereafter necessary, in order to quiet the Defendant and make it safe for your Plaintiff to return to her home, to call the assistance of law enforcement officers * * *".

The only evidence tending, in any appreciable degree, to support the charge of cruelty, which we need consider, relates to the incident of February 1, 1958. The wife's version of that incident is as follows: "I was sitting at the table feeding Sharon and geting her ready for bed. While I was feeding her Grant was getting ready for bed and he wanted the baby to kiss him goodnight and she did not want him to and he went to the basement and got the yardstick and when he came back from the basement he took Sharon out of my arms and hit her twice against the legs with the yardstick and I broke the yardstick and threw it in the sink and when I came back from the sink Sharon was still on the table and I was shoved against the refrigerator and onto the floor and shoved against the stove and wall * * *". She further testified to the effect that, as a result of the incident, she suffered numerous bruises about the head, face and other parts of her body.

Within a few minutes after the incident the wife went to the home of a neighbor and called for members of the State Department of Public Safety. In response to the call two members of that department came to the home of the Christophers, talked with them, but made no arrest.

On the following morning plaintiff, with the child, attended Sunday School and church. On the following Monday she visited the office of her family physician, who made a thorough physical examination of her, and on the following Tuesday she consulted an attorney about her difficulties with the defendant, and was advised by the attorney to go back home and "try to iron things out". The parties continued to reside in the home, without any further controversy, until February 11, 1958, when she left, delivering to the defendant the keys to the automobile used by her in moving, advising him that she and the child had left the home. Since leaving, she and the child have resided in the home of the mother of the plaintiff.

The wife further testified to the effect that she and her husband had previously separated "at least two times", but that the last separation before February 11, 1958, was five years anyway"; that the defendant had a "high temper", and used vulgar and profane language in the presence of the child; and that her extreme nervousness was due to the ill treatment by defendant. When asked if defendant often corrected the child or punished the child, she replied: "He never punished her too much or corrected her too much. Sharon is only two and a half years old and you do not correct a child that age too much".

Doctor Davis, the family physician who examined plaintiff on Monday after the incident of February 1, 1958, testified to the effect that plaintiff was then suffering from "multiple small abrasions of the head and face and both wrists", and from "acute anxiety syndrome", and explained that acute anxiety syndrome was the result of "a group of symptoms of extreme apprehension and nervousness with tremor and depression associated with wanting to cry and being emotionally upset". He also testified to the effect that the abrasions were superficial and that plaintiff had suffered from nervousness prior to the incident of February 1, 1958,

but for reasons not connected with difficulties with defendant.

The mother of plaintiff, Pearl Ringer, testified to the effect that she noticed the extreme nervousness of plaintiff for "quite a while because I had reason to be there quite often, long before the time I had my arm broken". Also, that she visited the plaintiff on Monday, February 3, after the incident of February 1, 1958, and observed "a knot on her head and a mark on her arm and also on her legs blue spots", and "black and blue marks on her face".

Robert Hale and Ross Teets testified to the effect that plaintiff was a fit and proper person to have custody of the child. John E. Coleman, one of the troopers who responded to the call made by the wife on the evening of February 1, 1958, stated that when he arrived at the home plaintiff had been "crying and her face was red", and that she "seemed to be upset"; that he and the other trooper went into the home, and talked with Mr. and Mrs. Christopher; that defendant was not drunk, but had been drinking; and that no warrant was obtained and no arrest made.

Defendant's version of the incident of February 1, 1958, is as follows: "Approximately nine or ten o'clock when she got the baby ready for bed I walked over to pick the baby up to kiss her goodnight and the baby was sleepy and tired and slapped me and I said she should not do that and she did it again and I picked the baby up and picked up the yardstick and struck her slightly on the leg, tapped her lightly, I did not hurt her, to correct her for it, and when I did so 'Libby' went in a state of anger stating I should not have did what I did, that I did not have sense enough to correct the child, and made quite an argument about it, and I said that I was correcting the child and I did not bother her when she corrected the child and she kept on that I did not have sense enough to correct her and should not be allowed to correct her and I asked her again to go on and be quiet that I did not want to hear any more about it

and I said that if you don't you might get your mouth slapped and she picked up the yardstick and broke it in two and said she dared me to and I reached over and took her by the arm and took one piece and tapped her lightly on the face and reached over to take the other piece and she tripped over my foot near the stove and refrigerator and she fell, catching herself on the stove and refrigerator. She did not say anything more. She went over and sat down for approximately four or five minutes and got up and went outside and I sat down with the baby in a chair and she came in and sat another approximately four or five minutes * * *". Defendant emphatically denies that he knocked plaintiff to the floor, or against the stove or refrigerator, and says that he noticed no bruises or scratches on her face on the day following the incident of February 1.

Carlos Christopher, a first cousin of defendant, testified to the effect that he and his wife very often visited in the home of plaintiff and defendant; that they were at the home on the afternoon of February 2, 1958; that he noticed nothing unusual "about the physical appearance" of plaintiff, noticed no "unusual marks about her face", and that she made no complaint about "feeling bad", or about "any difficulties" between her and her husband; and that he noticed nothing "unusual or different about the attitude of Grant Christopher toward his wife or of Mrs. Christopher toward Grant".

Maxine Thomas, an aunt of defendant and next door neighbor of plaintiff and defendant, and from whose home plaintiff made the telephone call to the troopers on the evening of February 1, 1958, stated that she did not know of any trouble between the plaintiff and defendant except that of February 1, 1958, but that she had been told of prior trouble; that she noticed no blood, bruises or swollen places about the face of plaintiff when she came to use the telephone, and that she saw plaintiff at church the next morning and at the drugstore afterward and noticed nothing about her being upset or having marks on her face.

There is no complaint as to lack of support by the husband. He was regularly employed at a reasonable salary, and the wife worked and earned a salary until about the time of the birth of the child. They own their own home, as "joint tenants with right of survivorship". There can be no doubt that the wife was very nervous, and easily and quickly emotionally disturbed, due, in part, perhaps, to a gallstone operation, a mastoid operation, and an accident which resulted in the loss of two toes. It may be noted here that nothing in the record indicates any lack of fitness on the part of either of the parties to have the custody of the child. The mother, perhaps, is in the better position or circumstance to have the custody, and the action of the lower court in awarding such custody to the mother can not be disturbed, in present circumstances.

Code, 48-2-29, as amended, provides that "Whenever a husband shall, without good and sufficient cause, have failed to provide suitable support for the wife * * * or if the wife, for such cause as would entitle her to a divorce * * * the circuit court * * * shall, at the suit of the wife * * * decree to the wife as alimony and separate maintenance such sum out of the husband's earnings and income as the court may determine * * *". It is significant that the statute authorizes a decree for separate maintenance to the wife only "for such cause as would entitle her to a divorce". The only such cause alleged in the instant suit relates to "cruel or inhuman treatment or reasonable apprehension of bodily harm". Code, 48-2-4, as amended, provides that a divorce may be decreed: "(d) For cruel or inhuman treatment, or reasonable apprehension of bodily hurt, and a charge of prostitution made by the husband against the wife shall be deemed cruel treatment within the meaning of this paragraph; cruel and inhuman treatment shall also be deemed to exist when the treatment by one spouse of another, or the conduct thereof, is such as to destroy or tend to destroy the mental or physical well-being, happiness and welfare of the other and render continued

cohabitation unsafe or unendurable". It is significant that the amendment of 1957 still requires that the conduct of the husband, to entitle the wife to a divorce, must be such as to "render continued cohabitation unsafe or unendurable".

In *Maxwell* v. *Maxwell*, 69 W. Va. 414, 71 S. E. 571, we held: "1. In a suit for divorce from bed and board, based on alleged cruel and inhuman treatment, the true issue and test is whether under all the facts proven, plaintiff can with safety to person and health continue to live with defendant."

In *Huff* v. *Huff*, 73 W. Va. 330, 80 S. E. 846, 51 L.R.A. N. S., 282, it was held: "1. Actual violence, to constitute ground for divorce, must be attended with danger to life, limb or health, or be such as to cause reasonable apprehension of such danger." See *Davis* v. *Davis*, 137 W. Va. 213, 70 S. E. 2d 889; *Persinger* v. *Persinger*, 133 W. Va. 312, 56 S. E. 2d 110; *Kessel* v. *Kessel*, 131 W. Va. 239, 46 S. E. 2d 792; *Cochran* v. *Cochran*, 130 W. Va. 605, 44 S. E. 2d 828; *Schutte* v. *Schutte*, 90 W. Va. 787, 111 S. E. 840.

In *White* v. *White*, 106 W. Va. 680, 146 S. E. 720, we held: "1. 'Cruel and inhuman treatment,' one of the statutory causes for divorce in this State, is, like negligence, a relative term, and of necessity must depend upon the circumstances of each particular case." See *McLaughlin* v. *McLaughlin*, 126 W. Va. 498, 29 S. E. 2d 1; *Thacker* v. *Thacker*, 125 W. Va. 103, 23 S. E. 2d 64.

In *Wolfe* v. *Wolfe*, 120 W. Va. 389, 198 S. E. 209, the Court held: "6. A party in a suit for divorce, as in all other equity cases, must come into court with clean hands. Before relief can be obtained, a complaining party's own conduct must be beyond substantial reproach." See *Lieberman* v. *Lieberman*, 142 W. Va. 716, 98 S.E. 2d 275; *Myers* v. *Myers*, 127 W. Va. 551, 33 S. E. 2d 897.

Appraising the evidence, as it relates to cruel or inhuman treatment of the wife by the husband, in the

light of the authorities referred to, and not overlooking the question of weight to be accorded the finding of the trial chancellor, we are of the view that the wife has failed to adduce evidence which would entitle her to a divorce, and, therefore, the decree for her separate maintenance should not stand. Accepting the testimony of the wife as true, it fails to disclose that degree of wrongdoing on the part of the husband, or such fear or reasonable apprehension of bodily harm on the part of the wife, as would justify the dissolution of the solemn vows of marriage, so watchfully and jealously guarded by the policy of the law. While the action of the husband may have been, and probably was, not considerate or judicious, there resulted no serious act of violence to the wife such as to induce or justify a fear by her as to the continued cohabitation with the husband. We can not say that the acts testified to by plaintiff constituted such "danger to life, limb or health, or be such as to cause reasonable apprehension of such danger" to her, or that such acts rendered "continued cohabitation unsafe or unendurable". The facts appear to establish conclusively that plaintiff, in returning to and living in the home with defendant after the incident of February 1, 1958, without further dispute or controversy, had no reasonable basis for any such apprehension.

In *Persinger* v. *Persinger,* 133 W. Va. 312, 316, 56 S. E. 2d 110, involving the right of a wife to a divorce, on a charge of cruelty, where the act of cruelty testified to by the wife was far more violent than the act of the husband here complained of, and where the wife was denied a divorce, this Court said: "* * * continued mistreatment giving rise to mental anguish, affecting the health, has been many times held to constitute cruelty for which a divorce may be decreed. But in this State, at least, we have never treated single isolated acts of cruelty, apparently not connected with any other proved act of cruelty, as justifying a divorce * * *"; citing *Wolfe* v. *Wolfe, supra* and *Thacker* v. *Thacker, supra.*

Moreover, according to the testimony, the wife was not without fault as to the one incident of which she complains so vigorously. Her action in interfering with the correction of the child, admittedly not being unduly punished by the father, was such as to provoke, in substantial part, at least, the action complained of. In *Lieberman* v. *Lieberman, supra,* this Court said: "Inequitable conduct of the wife which, though not suffiicient to constitute a ground for divorce, has caused or contributed substantially to the misconduct of the husband upon which she bases her right to relief in a suit for separate maintenance will preclude her from the relief which she seeks in such suit. The evidence shows clearly that the misconduct of the wife which the husband charges constituted cruel or inhuman treatment caused or contributed substantially to the acts and conduct of the husband on which she bases her claim to relief in the suit for separate maintenance * * *". Though plaintiff was advised by her attorney to attempt a reconciliation, she testified: "Grant made no effort with me to hold conversations and I made no effort to hold conversations with him, only to talk for the baby * * *".

We therefore affirm the action of the Circuit Court of Preston County in awarding custody of the child, Sharon Yvonne Christopher, to the mother, and reverse the action of that court in decreeing separate maintenance to the wife, Elizabeth Pearl Christopher, and remand the proceeding to that court. No costs shall be taxed to either party.

*Affirmed in part;*
*reversed in part;*
*remanded.*