HELEN C. GALLAHER

*v.*

BRUCE HAROLD GALLAHER

(No. 12146)

Submitted September 18, 1962. Decided December 11, 1962.

464

*Quinlan, Nelson & Williamson, H. G. Williamson,* for appellant.

*Robinson, Ellis & Rood, Robert O. Ellis, Jr.,* for appellee.

BROWNING, JUDGE:

Appellee, Helen C. Gallaher, brought suit against appellant, Bruce H. Gallaher, for separate maintenance in the Domestic Relations Court of Cabell County on July 11, 1958, alleging as grounds therefor that appellant had been guilty of cruel and inhuman treatment toward her and had abandoned her on August 9, 1957. Appellant answered, denying the allegations of cruel and inhuman treatment, and asked for a divorce a vinculo matrimonii on the ground that appellee had, without just or sufficient cause, wilfully abandoned appellant. That portion of the answer praying for an absolute divorce was subsequently dismissed as not germane to the suit for separate maintenance. Thereafter, on January 14, 1959, appellant brought suit against the appellee for an absolute divorce on the grounds: (1) That "defendant has been guilty of cruel and inhuman treatment toward him and her conduct thereof has been such as to destroy and tend to destroy the mental and physical well-being, happiness and welfare of the petitioner and has rendered continued cohabitation unsafe and unendurable"; and (2) desertion beginning in the month of August, 1957. Appellee answered, denying the grounds alleged in appellant's bill, in the words thereof, and prayed for affirmative relief in the nature of an absolute divorce, asserting verbatim the grounds set forth in appellant's bill as grounds therfor. The suits were consolidated for hearing, counsel having stipulated that "detailed testimony concerning any acts of cruel and inhuman treatment was admitted by consent of counsel for both parties under a general allegation in the bill."

The evidence shows that: the parties were married in February, 1938, and had one son, who was twenty years of age and emancipated at the time of the hearing; appellee became ill in 1950 and spent three months in Huntington State Hospital, a mental institution; she returned to the home for approximately five months until she became a patient in the Owens Clinic, a private institution, where she remained for thirteen months; she again entered the Owens Clinic sometime in 1956 and remained seven or eight months until March or April of 1957; during this period of time, 1950-

1957, appellant states that appellee would tell him she didn't love him, would refuse his attentions, and refused to have intercourse with him, though she took care of the house properly and was a good cook; she would sometimes sleep in the son's room and, on occasion, would spend nights with her parents; during appellee's last confinement in the Owens Clinic, appellant states that he rented their house, stored their furniture and moved into an apartment with his mother in order to pay the medical expenses incurred; upon appellee's discharge she and appellant continued to reside with his mother; during the three months preceding August 9, 1957, appellee began spending the nights at her parents' home with increasing frequency, returning in the morning, however, and preparing breakfast for appellant, and preparing his evening meal before returning to her parents' home; on August 9, 1957, appellant remonstrated with appellee for her reported reckless driving of their automobile and forbade her further use thereof whereupon appellee stated ". . . 'If I can't drive the car, that's the only thing I am interested in, anyway; I don't care anything about you.' and she said, 'You just take me home.' and she went in and packed her bags and I took her home. "; appellee thereafter called appellant and requested that he bring her other clothes to her which he did; appellant's mother testified, in regard to this incident of August 9, 1957, "She just told Bruce that she was packing her bags and then he could take her down home, and so he said 'All right.' So she told me, she said, 'Mom, I am going home and stay until I get well.' and she packed her bag and left. Well, then she would call and whenever she wanted clothes, to tell him to bring it to her." Appellant also testified that a period in excess of one year elapsed before appellee suggested that they again live together in order to make a home for their son, who was being released from the armed services.

Appellee testified that: when she returned from the Owens Clinic in 1957 and began residing with her husband in her mother-in-law's home she sensed a coldness and indifference on his part; she did not feel particularly wanted; appellant suggested on one or two occasions that she return to the clinic; she asked appellant to again start housekeeping

in their own home; when she went to her parents' home on August 9, 1957, she intended to return to her husband, taking with her only a change of underclothes and a few other articles ". . . something just to wear around the house."; and, she asked to return to him in January, 1958, and he replied, "Not interested." Other witnesses testified, corroborating both appellant and appellee, as to various acts which may or may not have amounted to mental or physical cruelty under the statute, however the great majority of these acts occurred prior to appellee's release from the Owens Clinic in 1957. Other acts, alleged by the appellee to have caused her great mental anguish since August 9, 1957, appear to have been occasioned, not by the appellant, but by the appellee herself. It is undenied that when appellee returned home from the clinic in 1957 both parties intended to condone all past offenses and to resume their marital relationship unqualifiedly. It is also undisputed that appellee and appellant ceased cohabitation on August 9, 1957, appellee going to her parents' home where she has since resided.

On April 22, 1959, the Domestic Relations Court denied the relief prayed for in appellee's suit for separate maintenance and in her cross-bill, and granted the appellant an absolute divorce on the ground of cruel and inhuman treatment. On appeal to the Circuit Court of Cabell County, that Court, on August 4, 1961, reversed the order of the Domestic Relations Court and remanded the "matters to said Court with directions to take testimony to properly ascertain a proper amount for the support of . . . [appellee] upon her bill for separate maintenance, . . ." to which order this Court granted an appeal and supersedeas on November 27, 1961.

The Circuit Court, in reversing the Domestic Relations Court of Cabell County in decreeing a divorce to the appellant, said: "For lack of jurisdiction in the divorce cause all decrees and orders therein, including the granting of the divorce to the plaintiff husband, are void, set aside, held for naught and the bill and answer and cross-bill filed therein are dismissed.", relying mainly, and rightfully so, upon this

language of the opinion in *Bennett* v. *Bennett*, 137 W. Va. 179, 187, 70 S. E. 2d 894, wherein the Court stated:

"The power of the court, however, to enter a valid judgment does not depend alone upon jurisdiction of the parties. It must as well have jurisdiction of the subject matter. . . .

"Likewise the court has no power to decree a divorce where the record shows upon its face a complete absence of facts to support the charge. . . ."

The Court subsequently concluded, after reciting the authorities, the facts alleged in the bill and the evidence: ". . . we hold that the facts alleged as constituting cruel and inhuman treatment are insufficient to constitute any charge entitling the husband to a divorce, and that the court was, therefore, *without jurisdiction* to enter a divorce decree." (Italics supplied.) The pertinent points of the syllabus of the *Bennett* case are as follows:

"4. 'Where the jurisdiction of a court to grant a divorce depends upon the existence of certain facts, such facts must be pleaded, and, if not pleaded, the court has no right or power to proceed or act in the cause.' Point 4, syllabus, *Jennings* v. *McDougle*, 83 W. Va. 186."

"5. A decree entered in a divorce proceeding where the court does not have jurisdiction of the subject matter is void, and may be attacked collaterally or directly."

The facts in the *Bennett* case may be briefly stated as follows: The parties thereto, for a sufficient period of time, had resided in Nicholas County, West Virginia, until December, 1948; thereafter they moved about until April, 1949, when they purchased property in Tampa, Florida; in December, 1949, the husband returned to Nicholas County, instituted a suit for divorce, and had process served on his wife, by substituted service, at an address in Kanawha County, which process was mailed to and received by the wife in Tampa, Florida; the wife appeared generally, by counsel, and the Circuit Court of Nicholas County, by order of May 31, 1950, decreed a divorce to the husband upon the

allegations of his bill to the effect that his wife "had kissed a certain man", she "may have had improper relations with that man"; "she continually quarrelled and nagged"; and, "she has no love or affection for him"; and concludes, that the wife has been "guilty of extreme and repeated cruelty." The evidence was found void of facts in any way substantiating mental or physical cruelty. After the entry of the decree in Nicholas County, the husband returned to Florida, whereupon the wife instituted a suit for divorce, praying that the Nicholas County decree be declared void, as obtained by fraud, upon the ground that both parties had been domiciled in Florida. The husband appeared generally, and the Florida Court found that the parties were domiciled in Florida from April, 1949, until the institution of the Florida proceeding and thus, the decree of the Circuit Court of Nicholas County was void for lack of jurisdiction of the parties, but denied the wife a divorce on the ground of condonation. Sometime later, the wife instituted a proceeding in the Circuit Court of Nicholas County praying that the decree of divorce, theretofore awarded to her husband in that court in 1950, be held void and for incidental relief. The husband demurred and filed a special plea of res judicata.

The trial court, upon a hearing, dismissed the wife's complaint upon finding that the wife had made a general appearance in the original divorce cause. Upon appeal, this Court reversed that decision, upon the principles of law stated in points 4 and 5, heretofore quoted.

The cases cited in the *Bennett* case to support the principles pronounced in the syllabus, properly substantiate the points decided. *Wass* v. *Wass,* 41 W. Va. 126, 23 S. E. 537 (trial court decreed divorce to both parties on ground of desertion when neither party asserted such ground in pleadings); *Ward* v. *Ward,* 115 W. Va. 429, 176 S. E. 708 (neither party domiciled); *Black* v. *Crouch,* 85 W. Va. 22, 100 S. E. 749 (decree extended beyond any foundation therefor in the pleadings); *Jennings* v. *McDougle,* 83 W. Va. 186, 98 S. E. 162 (suit for divorce instituted in neither county of last cohabitation nor defendant's residence); *Waldron* v. *Harvey,* 54 W. Va. 608, 46 S. E. 603, 102 Am. St. Rep. 959 (bill praying for partition

in kind between parceners without alternative request for sale, decree for sale held void); *Martin* v. *Kester*, 46 W. Va. 438, 33 S. E. 238 (proper parties not impleaded); *Coaldale Mining & Mfg. Co.* v. *Clark*, 43 W. Va. 84, 27 S. E. 294 (trial court held first lien deed of trust to be assignment for benefit of all creditors in absence of attack by pleadings or evidence). It will thus be seen that the principles pronounced in points 4 and 5 of the *Bennett* case were applicable thereto, and are hereby expressly approved, for the reason that the court lacked jurisdiction of the parties. The decision was therefore sound and based upon valid and subsisting principles of law. However, the language heretofore quoted, to the effect that the allegations of the bill were insufficient to entitle the husband to a divorce and that such insufficiency was *jurisdictional,* is hereby expressly disapproved. In the case of *Daily* v. *Brennan,* 123 W. Va. 261, 264, 14 S. E. 2d 617, 618, it was said: "Jurisdiction of causes does not always mean that all preliminaries necessary to the maintenance of a suit or action have been met, but that a court has the power to take cognizance of, and to hear and determine, certain classes of cases when interested parties have placed themselves in a position where a court may properly act. For example, a person who in good faith becomes a resident of this state has the right to invoke the *jurisdiction* of the circuit court of the county in which he or she resides in vindication of any right, including, under our statute, the right to sue for divorce. The fact that such suit must be postponed for a certain period does not in our opinion, affect the proposition that jurisdiction to hear that particular class of cases exists." There is a distinct difference between the failure to implead the parties necessary to the granting of the relief sought, or the failure to properly serve such parties, or for a court to decree relief above and beyond that which is prayed for in the pleadings, and the imperfect pleading of a cause of action over which the court has jurisdiction of both the parties and subject matter. Imperfect or insufficient pleadings may be corrected or the insufficiency supplied by amendment thereof. Code, 56-4-24, et seq. Such amendments must be by filing a new pleading, unless the Court, by order, otherwise permit. Rule V (d) Trial

Court Rules. In the instant case, there was no new pleading filed; however, counsel for the parties orally agreed to acquaint each other with the specific acts contended for as amounting to cruel and inhuman treatment and the court stated such agreement in the record. It might be contended that such action comes within the purview of Rule V (d) above. However, we need not decide the point, in view of our decision that the evidence is insufficient to entitle either party to a divorce.

As heretofore stated, the acts contended for by both parties to support their respective charges of cruelty occurred for the most part prior to the appellee's release from the Owens Clinic in 1957, and thereafter both parties intended to condone all past offenses and resume their marital relationship unqualifiedly. While condonation is always conditioned upon the subsequent good conduct of the offender, *Goldman* v. *Goldman*, 146 W. Va. 855, 122 S. E. 2d 843, there is nothing in the evidence to show that either party committed any offense thereafter sufficient to revive the previous grievances. The evidence of the husband merely shows that the wife, with increasing frequency, spent the nights at her parents' home, and perhaps denied any affection for him, but in all other respects was a dutiful wife, returning to his home in the morning to prepare his breakfast and preparing his evening meal for him. "Disavowals of love, expressions of hatred and the like, while the marital relation continues, do not constitute cruel and inhuman treatment of husband by wife." Syl. Pt. 2, *Schutte* v. *Schutte*, 90 W. Va. 787, 111 S. E. 840. Neither is the denial of sexual intercourse of itself sufficient to justify the granting of a divorce, *Cottle* v. *Cottle*, 129 W. Va. 344, 40 S. E. 2d 863, nor the fact that the parties, to a certain extent, occupied separate houses. *Reynolds* v. *Reynolds*, 68 W. Va. 15, 69 S. E. 381. The coldness and indifference asserted by the wife in support of her claim is likewise insufficient. *Davis* v. *Davis*, 137 W. Va. 213, 70 S. E. 2d 889; *Wills* v. *Wills*, 74 W. Va. 709, 82 S. E. 1092. Even if it could be said that the parties hereto were incompatible, incompatibility, without more, is insufficient to warrant a divorce. *Harbert* v. *Harbert*, 130 W. Va. 704, 45 S. E. 2d 15. The most that can be said from the evidence is that

the marriage in question was not a sublimely happy one. We, therefore, hold that neither party is entitled to a divorce upon the ground of mental cruelty. There is nothing in this record to show that the conduct of either party has been such as to destroy, or tend to destroy, the mental and physical wellbeing of the other or to render continued cohabitation unsafe and unendurable.

We also hold that a divorce may not be awarded to either party on the ground of desertion. Appellant's own witness, his mother, testified that appellee stated she was only "going home and stay until I get well", when she left their marital residence on August 9, 1957. It is undisputed that she took with her clothing sufficient only for a temporary stay and that, as she required other articles, she would call appellant and he would take them to her, until such time, and the date is not shown in the evidence, that appellant gathered up all of her clothing and took it to her. "Desertion is a breach of matrimonial duty, and is composed first, of the breaking off of matrimonial cohabitation; and second, an intent to desert in the mind of the offender. Both must combine to make the desertion complete." Syl. Pt. 1, *Burk* v. *Burk*, 21 W. Va. 445. "Mere cessation of cohabitation is not enough." *Tillis* v. *Tillis*, 55 W. Va. 198, 46 S. E. 926, 40 ALR 634. There is no showing in the present case of any intention to desert on the part of the appellee at the time she left appellant's home on August 9, 1957, in fact, the evidence is all to the contrary. The evidence of the wife upon this question is likewise insufficient. The testimony of the parties is in conflict as to when a request was made by her to return to appellant and the good faith of such request. Under the circumstances, appellee must have shown a bona fide offer of reconciliation, rejected by the appellant, and the separation thereafter for the statutory period. *Vickers* v. *Vickers*, 95 W. Va. 324, 122 S. E. 279, 41 ALR 266; *Burk* v. *Burk*, 21 W. Va. 445. This she has failed to do.

In view of the above holding, that neither party is entitled to a divorce on either the ground of mental or physical cruelty or desertion, the appellee's suit for separate maintenance must likewise fall. Code, 48-2-29, as amended, pro-

vides for separate maintenance ". . . if the wife, for such cause as would entitle her to a divorce, is actually living apart from her husband. . . ." In *Christopher* v. *Christopher*, 144 W. Va. 663, 110 S. E. 2d 503, it was said: "It is significant that the statute authorizes a decree for separate maintenance to the wife only 'for such cause as would entitle her to a divorce.' ", and denied such relief to the wife upon a showing that inequitable conduct on her part would have precluded her from obtaining a divorce. The appellee, therefore, having made no showing that would entitle her to an absolute divorce, is not entitled to relief by way of separate maintenance.

The judgment of the Circuit Court of Cabell County is affirmed insofar as it denies a divorce to either party but is reversed as to the allowance of separate maintenance to the appellee, and the case is remanded for further proceedings in accordance with the views expressed herein.

*Affirmed in part;*
*reversed in part;*
*and remanded.*